# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 71

City of Jamestown,

Plaintiff and Appellee

v.

Santos Regalado Casarez, III,

Defendant and Appellant

## No. 20200279

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable Troy J. LeFevre, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen and Justices McEvers and Tufte joined. Justice VandeWalle filed a concurring opinion.

Abbagail C. Geroux, Assistant City Attorney, Jamestown, ND, for plaintiff and appellee.

Luke T. Heck (argued) and Drew J. Hushka (appeared), Fargo, ND, for defendant and appellant.

**Crothers, Justice.**

[¶1]   Santos Regalado Casarez, III, appeals from a criminal judgment entered after his motion to suppress was denied and his conditional guilty plea to refusing to take a chemical breath test was accepted. We affirm.

I

[¶2]   At approximately 11 p.m. on November 6, 2019, Jamestown Police Officer Andrew Noreen witnessed a physical altercation between Casarez and a female outside a bar in Jamestown. That altercation led to the arrest of the female within 30 minutes of Noreen's initial encounter with the two. Noreen learned the altercation occurred because the female did not want Casarez to drive while intoxicated. Officer Renfro also was at the scene and spoke to the female and Casarez. During Renfro's conversation with Casarez, he smelled an odor of alcohol on Casarez's breath, and observed Casarez's poor balance and bloodshot eyes. At that point Renfro formed the opinion Casarez was not capable of lawfully driving a motor vehicle. Casarez inquired how to post bail for his girlfriend. Renfro provided him with the necessary information, and advised him to take a cab to the law enforcement center (LEC) due to his intoxication. During their conversation, Renfro learned Casarez drove a gold GMC Yukon. Renfro then left the scene.

[¶3]   At approximately 11:45 p.m. Renfro observed a gold GMC Yukon parked outside the LEC, along with a man he believed to be Casarez standing inside the lobby. Renfro observed the unoccupied Yukon was running with its lights on. Renfro made contact with Casarez in the lobby, observing the same signs of impairment as earlier. Renfro began talking to Casarez to confirm or dispel his suspicion Casarez had driven to the LEC. During their conversation Casarez changed his story about getting to the LEC, initially stating he took a cab, but after being confronted about his vehicle outside, stating his friend drove him. Renfro also noticed a lanyard with keys hanging out of Casarez's pocket. Renfro informed Casarez he was under investigation for driving under

the influence. He then requested Casarez complete a Horizontal Gaze Nystagmus (HGN) test. Renfro observed six of six clues during the HGN test. Following the HGN test, Renfro reviewed LEC security footage to confirm Casarez drove himself. Renfro then requested Casarez submit to a preliminary breath test and placed Casarez under arrest.

[¶4] Following the arrest, Renfro provided Casarez with an implied consent advisory, and requested a chemical breath test. Casarez refused to submit to the breath test. Renfro informed Casarez if he did not agree to take the test, he would be charged with criminal DUI refusal. Casarez maintained his refusal.

[¶5] The City of Jamestown charged Casarez with DUI-Refusal under Jamestown Municipal Code § 21-04-06(1)(e)(ii). After the district court rejected his motion to suppress and dismiss the charge, Casarez conditionally pled guilty, preserving his right to appeal. Casarez then filed his appeal.

II

[¶6] Casarez argues Jamestown Municipal Code § 21-04-06 is in direct conflict with N.D.C.C. § 39-08-01 after the Legislature's 2019 amendment to the statute. Casarez claims the Ordinance is void because it conflicts with a state statute.

[¶7] "Cities are creatures of statute and possess only those powers and authorities granted by statute or necessarily implied from an express statutory grant." *City of Bismarck v. Fettig*, 1999 ND 193, ¶ 4, 601 N.W.2d 247. Except as provided in a statute not relevant here, "an offense defined in this title or elsewhere by law may not be superseded by any city or county ordinance, or city or county home rule charter, or by an ordinance adopted pursuant to such a charter, and all such offense definitions shall have full force and effect within the territorial limits and other jurisdiction of home rule cities or counties." N.D.C.C. § 12.1-01-05. Section 12.1-01-05, N.D.C.C., "is an expression of the legislature's intent that state criminal laws are to have uniform application throughout the state." *State, ex rel. Harris v. Lee*, 2010 ND 88, ¶ 12, 782 N.W.2d 626. "[I]f the legislature enacts a statute which clearly conflicts with

2

ordinances that have been enacted the statute prevails and the conflicting ordinances are superseded and rendered invalid." *State ex rel. City of Minot v. Gronna*, 59 N.W.2d 514, 531 (N.D. 1953).

[¶8]   The July, 2013 Ordinance at issue here reads:

> "(1) A person may not drive or be in actual physical control of any vehicle upon a street or public or private areas to which the public has right of access for vehicular use in this city of any of the following apply:
> . . . .
> (e) That individual refuses to submit to . . . :
> . . . .
> (ii) A chemical test, or tests, of the individual's blood, breath, or urine to determine the alcohol concentration or presence of other drugs, or combination thereof, in the individual's blood, breath, or urine, at the discretion of a law enforcement officer under Section 39-20-01 of the North Dakota Century Code[.]"

Jamestown Mun. Code Ord. 1409.

[¶9]   In 2019 the North Dakota Legislature amended N.D.C.C. § 39-08-01. After the amendment, section 39-08-01 remains the same as the Ordinance except subdivision f was added to state law. Subdivision f states "Subdivision e does not apply to an individual unless the individual has been advised of the consequences of refusing a chemical test consistent with the Constitution of the United States and the Constitution of North Dakota." N.D.C.C. § 39-08-01.

[¶10] Casarez maintains the Ordinance directly conflicts with N.D.C.C. § 39-08-01 as amended in 2019. He argues the law presumes the Legislature does not perform idle acts. *See Bickel v. Johnson*, 530 N.W.2d 318, 320 (N.D. 1995). According to Casarez, by adding the limitation in subdivision f, the Legislature intended to limit DUI-Refusal prosecutions. However, we do not examine the intent of the Legislature unless a statute is ambiguous. N.D.C.C. § 1-02-05. This Court determined subdivision f is not ambiguous. *State v. Long*, 2020 ND 216, ¶¶ 11, 14, 950 N.W.2d 178. Thus, any claim that the Ordinance and statute are in conflict must be resolved by examining whether the Ordinance allows that which the statute explicitly prohibits. *See State v. Westrum*, 380

N.W.2d 187, 189 (Minn. Ct. App. 1986) (explaining an ordinance may not "authorize what a statute forbids"); *McQuillin on Municipal Corporations*, 3rd ed., § 23:7 ("an ordinance ordinarily cannot permit that which a statute forbids . . .").

[¶11] Casarez agues because the Ordinance fails to include a provision equivalent to N.D.C.C. § 39-08-01(f), the City could prosecute an individual for refusing a chemical test request even if law enforcement failed to advise the motorist of the consequences of refusal consistent with the United States and North Dakota Constitutions. We reject Casarez's claim because the decisions of this Court and the United States Supreme Court regarding the constitutionality of prosecutions for refusals and unduly coercive advisories are inconsistent with his assertion. *See Birchfield v. North Dakota*, 136 S.Ct. 2160, 2186 (2016) (explaining the Fourth Amendment prohibits law enforcement officers from conveying to a defendant the criminal consequences of refusal to submit to a blood test without a warrant); *State v. Helm*, 2017 ND 207, ¶ 16, 901 N.W.2d 57 (likening requests for urine submissions to requests for blood samples, explaining warrantless urine tests are not reasonable searches incident to valid arrests of suspected impaired drivers, and concluding the district court did not err in dismissing charges against defendant who refused to submit to warrantless urine test). Even before the Legislature's addition of subdivision f in 2019, this Court recognized a prohibition on prosecutions involving unconstitutionally coercive advisories. Further, the language in N.D.C.C. § 39-08-01(f) merely "establishes an unambiguous acknowledgement of the presumption that the statute, and the advisory therein, are in compliance with the state and federal constitutions." *See Long*, 2020 ND 216, ¶ 14.

[¶12] Casarez also would have us read the 2019 amendment to N.D.C.C. § 39-08-01 in isolation. In fact, that change was one of several modifications to the DUI laws. The Legislature also changed N.D.C.C. § 39-20-01 regarding implied consent advisories. There, the Legislature removed the statutory exclusionary rule in criminal DUI refusal cases. *See* 2019 N.D. Sess. Law Ch. 322, section 3. That change shown in legislative format provided the following:

a.  The law enforcement officer shall inform the individual ~~charged that~~ North Dakota law requires the individual to take a chemical test to determine whether the individual is under the influence of alcohol or drugs and ~~that~~ refusal of the individual to submit to a test directed by the law enforcement officer may result in a revocation of the individual's driving privileges for a minimum of one hundred eighty days and up to three years. ~~In addition, the law enforcement officer shall inform the individual refusal to take a breath or urine test is a crime punishable in the same manner as driving under the influence. If the officer requests the individual to submit to a blood test, the officer may not inform the individual of any criminal penalties until the officer has first secured a search warrant.~~

b.  A ~~test administered under this section~~ If an individual refuses to submit to testing under this section, proof of the refusal is not admissible in any ~~criminal or~~ administrative proceeding ~~to determine a violation of section 39-08-01 or~~ under this chapter if the law enforcement officer fails to inform the individual ~~charged~~ as required under subdivision a.

*Id.*

[¶13] After the 2019 changes to N.D.C.C. §§ 39-08-01 and 39-20-01(3)(b), the statutory exclusionary remedy was removed in criminal cases if law enforcement failed to give a textually correct implied consent advisory. *Id.* In its place, N.D.C.C. § 39-08-01(f) was added to explain that proof of refusal, and the evidentiary use of refusal to take a chemical test, would be controlled by constitutional standards rather than by statutory exclusion. The 2019 Legislative change was consistent with a result advocated by several members of this Court. *See Schoon v. North Dakota Dept. of Transp.*, 2018 ND 210, ¶ 35, 917 N.W.2d 199 ("Even if the advisory itself is not repealed, I urge the Legislature to consider removing the exclusionary rule so that cases can be decided on the traditional grounds of whether the implied consent advisory adversely affected an operator's consent to chemical testing. *See State v. Fleckenstein*, 2018 ND 52, ¶ 9, 907 N.W.2d 365 (totality of the circumstances approach must be taken in determining voluntariness of consent to a blood test).") (Crothers, specially concurring); *LeClair v. Sorel*, 2018 ND 255, ¶ 30,

920 N.W.2d 306 ("Under the law applicable to this case, the legislature requires the advisory, and requires suppression of chemical test results if law enforcement fails to give the required advisory. *See* N.D.C.C. § 39-20-01(3)(a) and (b). Both the advisory and the statutory exclusionary rule have proven problematic, and I have advocated for modification of the law. *See Schoon*, at ¶ 35 (Crothers, J., specially concurring).").

[¶14] With this full statutory history in mind, we conclude the plain language of the Ordinance does not authorize anything that N.D.C.C. § 39-08-01 prohibits. Rather, the Ordinance reads similar to the statute except for subdivision f. This Court recognized subdivision f did not serve as a prohibition or authorization of any particular thing. Instead, the modification explains that claims of coercive implied consent advisories must be measured by constitutional standards rather than under the former statutory exclusionary rule. Therefore, the Ordinance does not conflict with the post-2019 version of N.D.C.C. § 39-08-01.

## III

[¶15] Casarez argues Renfro unreasonably seized him in violation of N.D.C.C. § 29-29-21, Article I, § 8 of the North Dakota Constitution, and the Fourth Amendment of the United States Constitution. Casarez argues he was seized when Renfro entered the LEC by placing himself between Casarez and the only exit. Casarez claims Renfro did not have reasonable suspicion when he seized Casarez.

[¶16] "The Fourth Amendment of the United States Constitution and Article I, Section 8 of the North Dakota Constitution protect individuals from unreasonable searches and seizures." *State v. Gagnon*, 2012 ND 198, ¶ 8, 821 N.W.2d 373. "A person alleging a Fourth Amendment violation has an initial burden of establishing a prima facie case of an illegal search or seizure." *State v. Schmidt*, 2016 ND 187, ¶ 8, 885 N.W.2d 65. After a defendant makes a prima facie showing, the burden shifts to the City to show an exception applies. *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 6, 571 N.W.2d 137.

[¶17] A seizure occurs "whenever an officer stops an individual and restrains his freedom. . ." *State v. Gay*, 2008 ND 84, ¶ 14, 748 N.W.2d 408. A "person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *State v. Fields*, 2003 ND 81, ¶ 11, 662 N.W.2d 424. "When analyzing if a seizure has occurred, the Court looks at whether there was the 'threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's requests might be compelled.'" *State v. Steffes*, 2010 ND 232, ¶ 8, 791 N.W.2d 633. No seizure occurs when a defendant fails to show "his cooperation was produced by coercive means, that he felt the deputy's actions were threatening or offensive, that he felt as if he could not terminate the conversation or that a reasonable person would have felt threatened, coerced or unable to leave." *State v. Schneider*, 2014 ND 198, ¶ 12, 855 N.W.2d 399.

[¶18] Casarez argues he was seized when Renfro entered the LEC. According to Casarez, Renfro purposefully placed himself between Casarez and the only exit, and upon Casarez completing the transaction for his girlfriend's bail, Renfro physically prevented him from leaving and began questioning him. Renfro testified he did not remember blocking the exit, and entered the lobby with the intent of confirming or dispelling his suspicion Casarez drove to the LEC. Renfro testified that, after entering the lobby, he began asking questions of Casarez. Renfro stated after Casarez changed his story about how he got to the LEC, Renfro informed Casarez he was under investigation for driving under the influence and requested a HGN test. The district court made no conclusion about when Casarez was seized, instead only determining whether his seizure was unlawful.

[¶19] Under the facts taken as a whole, Renfro's behavior did not constitute a seizure until he informed Casarez he was under investigation for driving under the influence and requested that he complete the HGN test. The testimony provided showed there was a relaxed, conversational tone between Casarez

and Renfro until Renfro informed Casarez he was under investigation. Further, Renfro testified he was not blocking the exit while Casarez completed his transaction. When Renfro requested the HGN test, however, his tone became more compelling, giving rise to a seizure of Casarez. We conclude Casarez was not seized until Renfro told him he was under investigation and requested the HGN test.

B

[¶20] "Under the Fourth Amendment of the United States Constitution, police may, in appropriate circumstances and in an appropriate manner, detain an individual for investigative purposes when there is no probable cause to make an arrest if a reasonable and articulable suspicion exists that criminal activity is afoot." *Anderson v. Dir., N.D. Dept. of Transp.*, 2005 ND 97, ¶ 8, 696 N.W.2d 918 (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). In evaluating a factual basis for an investigative stop, the court must consider the totality of the circumstances and information known to the officer at the time of the stop. *See City of Fargo v. Ovind*, 1998 ND 69, ¶ 8, 575 N.W.2d 901. The Court applies this test to decide "whether a seizure is justified, noting if there is reasonable and articulable suspicion that a person has committed or is about to commit a crime, the seizure is justified." *State v. Casson*, 2019 ND 216, ¶ 14, 932 N.W.2d 380. "When assessing reasonableness, we consider inferences and deductions an investigating officer would make which may elude a layperson." *Ovind*, at ¶ 9. This review is limited to the information known to the officer at the time of the stop and this information must be more than a mere hunch. *Casson*, at ¶ 9.

[¶21] Casarez claims Renfro lacked reasonable suspicion to seize him. According to Casarez, *Lies v. North Dakota Department of Transportation,* 2019 ND 83, 924 N.W.2d 448, controls and requires the conclusion Renfro did not possess reasonable suspicion necessary to seize Casarez. In *Lies*, an off-duty officer witnessed a "white HHR" vehicle driving erratically, reporting the tip to the North Dakota Highway Patrol. *Id*. at ¶ 2. Within an hour of the tip to the North Dakota Highway Patrol, an on-duty officer encountered a white HHR, seizing it, without observing any traffic violation or erratic conduct. *Id*.

8

Law enforcement arrested the driver for DUI. *Id.* This Court concluded the officer impermissibly seized the HHR and driver, stating "the basic description provided . . . did not allow for officers to properly identify the vehicle as the one reported in the tip. Because officers could not reasonably identify the vehicle, reasonable articulable suspicion did not exist to support stopping [the motorist's] vehicle." *Id.* at ¶ 11.

[¶22] Casarez maintains Renfro could not have reasonably identified his vehicle. According to Casarez, Renfro lacked an articulable basis to conclude the vehicle outside the LEC belonged to Casarez, or that Casarez drove the vehicle. In considering the totality of the circumstances, this case is significantly different than *Lies*. Here, Renfro knew a number of facts that could have helped him arrive at the reasonable suspicion the gold GMC Yukon belonged to Casarez and Casarez drove to the LEC. Renfro recently encountered Casarez, whom he believed to be intoxicated. During the first encounter, Renfro learned the altercation arose because the female involved did not want Casarez driving while intoxicated. Renfro also learned Casarez drove a gold GMC Yukon and wished to make bail for his girlfriend. Less than 30 minutes later, Renfro observed a gold GMC Yukon running outside the LEC. He also observed a person inside the lobby whom he recognized to be Casarez. Nobody else was inside the Yukon. Once inside the LEC, Renfro's questioning revealed Casarez to be evasive about how he arrived at the LEC. Renfro also noted Casarez had a lanyard in his pocket that appeared to hold keys to a vehicle.

[¶23] Renfro had first-hand knowledge that Casarez was intoxicated, that Casarez had a gold GMC Yukon, that he planned on going to the LEC, that 30 minutes later a gold GMC Yukon was outside the LEC, that Casarez was inside the LEC, and that Casarez was evasive when questioned about how he got there. These facts reasonably support Renfro's suspicion a crime was or would be committed. The district court therefore did not err in finding Casarez was not unreasonably seized.

9

## IV

[¶24] The criminal judgment is affirmed.

[¶25] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte


**VandeWalle, Justice, concurring.**

[¶26] I concur in the result. *See Schoon v. N.D. Dep't of Transp.*, 2018 ND 210, ¶¶ 37-48, 917 N.W.2d 199 (VandeWalle, C.J., dissenting).

[¶27] Gerald W. VandeWalle