# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 225

State of North Dakota,                                   Plaintiff and Appellee

v.

Len Vannett,                                      Defendant and Appellant

No. 20210158

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Steven E. McCullough, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Nicholas S. Samuelson (argued) and Kimberlee J. Hegvik (on brief), Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

Leslie Johnson Aldrich (argued) and Victoria C. Jones (on brief), Fargo, ND, for defendant and appellant.

## State v. Vannett
## No. 20210158

**Crothers, Justice.**

[¶1]  Len Vannett appeals from an amended criminal judgment entered after his conditional guilty plea for actual physical control of a vehicle while under the influence of alcohol. He argues the arresting officer lacked reasonable and articulable suspicion for the stop and the approved methods were not followed in administering the intoxilyzer breath machine. We affirm.

I

[¶2]  On July 10, 2020, an anonymous caller reported a possibly impaired driver struggling to open their vehicle door at a gas station in Casselton, ND. Cass County Sheriff's Deputy Jacob Murray located the vehicle parked in front of a gas station and observed that it was running.

[¶3]  While Murray was looking around the outside of the vehicle, Vannett walked out of the gas station. Murray observed Vannett having problems keeping his balance. Once Vannett came closer, Murray smelled the odor of alcohol and noticed Vannett's eyes were bloodshot and watery and his speech was slurred.

[¶4]  Vannett told Murray he was driving the vehicle. Murray then turned off the vehicle's ignition, removed the keys, and requested Vannett submit to field sobriety tests. Murray performed the Horizontal Gaze Nystagmus test and observed five of six clues. Murray also asked Vannett to take an alphabet test, which Vannett was unable to complete. Murray requested and Vannett consented to a preliminary breath test, which produced a result over the legal limit. Murray then placed Vannett under arrest and transported him to the Cass County Jail.

[¶5]  Cass County Sheriff's Deputy Brad Heger administered the Intoxilyzer 8000 breath test at the jail. The first Intoxilyzer Test Record and Checklist stated the test resulted in a "Purge Fail." Upon receiving the error message, Heger administered a second test. The second test resulted in a "Cal Check

Out of Tolerance." Heger called his field inspector, who instructed him to restart the intoxilyzer machine. Heger restarted the machine and administered a third test. The third test resulted in a breath specimen over the legal limit.

[¶6] The State charged Vannett with actual physical control of a motor vehicle while under the influence of alcohol. Vannett filed a motion to suppress evidence, arguing law enforcement lacked reasonable and articulable suspicion for the stop, the implied consent advisory was problematic, and the proper procedure in administering the intoxilyzer machine was not followed. The district court denied Vannett's motion. Vannett conditionally pled guilty and preserved his right to appeal the denial of his motion to suppress. The court approved the conditional plea and entered judgment accordingly.

## II

[¶7] Vannett argues Deputy Murray unreasonably seized him. Vannett claims Murray did not have reasonable suspicion to stop Vannett based on the anonymous tip.

[¶8] "The Fourth Amendment of the United States Constitution and Article I, [§] 8 of the North Dakota Constitution protect individuals from unreasonable searches and seizures." *City of Jamestown v. Casarez*, 2021 ND 71, ¶ 16, 958 N.W.2d 467. If a defendant makes a prima facie showing of an illegal search or seizure, the burden shifts to the government to show an exception applies. *Id.*

## A

[¶9] A seizure occurs when "an officer stops an individual and restrains his freedom." *Casarez*, 2021 ND 71, ¶ 17.

> "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. When analyzing if a seizure has occurred, the Court looks at whether there was the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone

2

of voice indicating that compliance with the officer's requests might be compelled. No seizure occurs when a defendant fails to show his cooperation was produced by coercive means, that he felt the deputy's actions were threatening or offensive, that he felt as if he could not terminate the conversation or that a reasonable person would have felt threatened, coerced or unable to leave."

*Id.* (cleaned up).

[¶10] An officer does not make a Fourth Amendment seizure by approaching and talking with a person in a public place, including a stopped vehicle. *State v. Leher*, 2002 ND 171, ¶ 7, 653 N.W.2d 56. "If, however, an officer directs a citizen to exit a parked vehicle, or otherwise orders a citizen to do something, then the officer has arguably made a stop which, consistent with the Fourth Amendment rights of the citizen, requires the officer to have a reasonable and articulable suspicion that person has been or is violating the law." *Id.*

[¶11] Vannett argues he was seized when Murray placed his body between Vannett and the driver door of the vehicle. The district court made no finding about when Vannett was seized, instead determining whether his seizure was unlawful. The testimony showed there was a conversational tone between Murray and Vannett until Vannett admitted to driving the vehicle. Under these facts, Murray did not seize Vannett until he turned off the vehicle's ignition and removed the keys.

B

[¶12] To decide whether a seizure was constitutionally permissible, we analyze whether there is "reasonable and articulable suspicion that a person has committed or is about to commit a crime." *Casarez*, 2021 ND 71, ¶ 20.

"Whether an officer had a reasonable and articulable suspicion is a fact-specific inquiry that is evaluated under an objective standard considering the totality of the circumstances. Under this standard, the articulable aspect requires that the stop be justified with more than just a vague hunch or other non-objective facts; and the reasonable aspect means that the articulable facts must

produce, by reasonable inference, a reasonable suspicion of unlawful conduct."

*State v. Van Der Heever*, 2021 ND 116, ¶ 7, 961 N.W.2d 272 (cleaned up).

[¶13] Vannett claims Murray lacked reasonable and articulable suspicion because he relied on an anonymous caller's information and observed no evidence of alcohol consumption around the parked vehicle. Because Vannett was seized when Murray removed the keys from the ignition, we look to the facts known to Murray at that time. *See Van Der Heever*, 2021 ND 116, ¶ 7.

[¶14] Vannett argues the anonymous tip failed to establish reasonable and articulable suspicion. But that is not the sole fact Murray relied on before the seizure occurred. Murray testified he smelled the odor of alcohol and noticed Vannett's eyes were bloodshot and watery and his speech was slurred. Vannett also told Murray he had been driving the vehicle. Based on the totality of the circumstances, Murray had reasonable and articulable suspicion to seize Vannett when he observed signs of impairment and Vannett admitted to driving the vehicle. Therefore, the district court did not err in denying Vannett's motion to suppress based on the seizure.

## III

[¶15] Vannett argues his chemical breath test result should have been suppressed because Deputy Heger did not follow the approved methods in administering the Intoxilyzer 8000 machine.

[¶16] "Whether a chemical test was fairly administered is a question of admissibility left to the district court's discretion." *State v. Blaskowski*, 2019 ND 192, ¶ 4, 931 N.W.2d 226. This Court reviews evidentiary rulings for an abuse of discretion. *Id.* "A district court abuses its discretion only if it acts in an arbitrary, unreasonable or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law." *Id.*

[¶17] "Section 39-20-07, N.D.C.C., governs the admission of a chemical test result and allows the use of certified documents to establish the evidentiary

foundation for the result." *Blaskowski*, 2019 ND 192, ¶ 5. The government must demonstrate four elements for the admission of the test result, one of which is the test was "fairly administered." *Id.*

[¶18] Vannett argues the test was not fairly administered because Heger failed to strictly comply with the steps in the Intoxilyzer 8000 training manual. After a "purge fail" or "calibration check out of tolerance" message, the training manual instructs the operator to tell the subject to not spit into the instrument when supplying a breath sample. Next, the manual instructs the operator to run an "ACA test" to dry out the instrument. If the problem persists, the manual instructs contacting the field inspector or crime laboratory to troubleshoot. Here, Heger called the field inspector after he received the "purge fail" and "calibration check out of tolerance" messages. The field inspector instructed Heger to restart the intoxilyzer machine.

[¶19] To facilitate compliance with N.D.C.C. § 39-20-07 and the requirement of fair administration, the state toxicologist established approved methods for administering chemical breath tests. *Blaskowski*, 2019 ND 192, ¶ 6. "If the evidence fails to show 'scrupulous compliance' with the approved method for administering a chemical breath test, the evidentiary shortcut provided by N.D.C.C. § 39-20-07 cannot be used and fair administration of the test must be established through expert testimony." *Id.* at ¶ 7. In other words, although N.D.C.C. § 39-20-07 provides a statutory shortcut, it does not prevent expert testimony to show fair administration of chemical testing.

[¶20] Here, the state toxicologist testified at the suppression hearing that Heger contacted his field inspector and followed instructions. The state toxicologist ultimately testified the third test was valid. Based on the testimony, the district court denied Vannett's motion to suppress the intoxilyzer result. On this record, we cannot say the district court abused its discretion in denying Vannett's motion to suppress.

## IV

[¶21] We have considered the remaining issues and arguments raised by the parties and find them to be either unnecessary to our decision or without merit. The amended criminal judgment is affirmed.

[¶22] Jon J. Jensen, C.J.
    Gerald W. VandeWalle
    Daniel J. Crothers
    Lisa Fair McEvers
    Jerod E. Tufte