# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2025 ND 21

Lee Richard Meiers,                                                              Appellee

v.

North Dakota Department of Transportation,                    Appellant

### No. 20240215

Appeal from the District Court of Mountrail County, North Central Judicial District, the Honorable Stacy J. Louser, Judge.

REVERSED.

Opinion of the Court by Bahr, Justice.

Chad R. McCabe, Bismarck, ND, for appellee.

Michael T. Pitcher, Assistant Attorney General, Bismarck, ND, for appellant.

**Bahr, Justice.**

[¶1]   The North Dakota Department of Transportation appeals from a district court judgment reversing the hearing officer's decision suspending Lee Meiers's driving privileges. On appeal, the Department argues it had authority to suspend Meiers's driving privileges. We reverse the district court's judgment and reinstate the Department's decision suspending Meiers's driving privileges.

I

[¶2]   On December 19, 2023, a law enforcement officer arrested Meiers for driving under the influence. Following the arrest, the officer read Meiers the implied consent advisory and requested Meiers take a chemical breath test. Meiers consented to take the breath test, which the officer conducted. The breath test showed Meiers had an alcohol concentration above the legal limit for driving.

[¶3]   The officer completed and certified a report and notice form. The report and notice form is a one-page document completed by an officer. The report and notice form documents information about the arrest, including whether a specimen for a chemical test was obtained, when it was obtained, and the test result. Above the space for the officer's signature, the report and notice form reads, "I personally certify as a law enforcement officer that this written report is true and correct to the best of my knowledge at the time of completing this report."

[¶4]   The officer printed the test record and checklist. The test record and checklist is a one-page document the Intoxilyzer machine prints at the end of a chemical breath test. The following language precedes the operator's signature line on the test record and checklist: "I followed the Approved Method and the instructions displayed by the Intoxilyzer in conducting this test." The officer signed the test record and checklist. The officer gave to Meiers the driver's copy of the report and notice form and a copy of the signed test record and checklist. The officer then forwarded to the Department a copy of the certified report and

notice form and a copy of the signed test record and checklist. The officer did not certify the test record and checklist before forwarding it to the Department. The certification language absent from the test record and checklist certifies the undersigned has custody of the original public record, that the document is a true and correct copy of the original document, and that it is maintained as part of the office's activities.

[¶5] Meiers requested an administrative hearing. At the hearing, after the officer testified to the test record and checklist's authenticity, the Department offered the uncertified test record and checklist into evidence. Meiers objected, arguing the test record and checklist was not certified under N.D.C.C. § 39-20-03.1 and thus the Department lacked authority to suspend his driving privileges. The hearing officer overruled the objection and admitted the test record and checklist into evidence. At the end of the hearing, Meiers renewed his objection to the admission of the test record and checklist due to it not being certified. The hearing officer concluded the test result and checklist was admissible and the Department had authority to suspend Meiers's driving privileges. The hearing officer suspended Meiers's driving privileges for 180 days.

[¶6] Meiers appealed to the district court. The court reversed the hearing officer's decision. The court concluded a certified copy of the test record and checklist was required to invoke the Department's authority and, because the test record and checklist was not certified, the Department did not have authority to suspend Meiers's driving privileges.

II

[¶7] "The Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, governs our review of an administrative decision to suspend or revoke a driver's license." *Schock v. N.D. Dep't of Transp.*, 2012 ND 77, ¶ 11, 815 N.W.2d 255. In reviewing an administrative decision, "[w]e review the Department's original decision, giving deference to its findings of fact and reviewing its legal conclusions de novo." *Goff v. Panos*, 2022 ND 186, ¶ 6, 981 N.W.2d 909. This Court must affirm the Department's decision unless it determines a statutory ground for reversal is present. N.D.C.C. § 28-32-46; N.D.C.C. § 28-32-49 ("The judgment of the district

2

court in an appeal from an order . . . of an administrative agency or the commission may be reviewed in the supreme court on appeal in the same manner as provided in section 28-32-46[.]"). One ground for reversal is if the Department's order "is not in accordance with the law." N.D.C.C. § 28-32-46(1). The issue here is whether the hearing officer's decision the Department had authority to suspend Meiers's driving privileges is in accordance with the law. *Kirkpatrick v. N.D. Dep't of Transp.*, 2023 ND 190, ¶ 8, 996 N.W.2d 640. That is a question of law we review de novo. *Koenig v. N.D. Dep't of Transp.*, 2005 ND 95, ¶ 9, 696 N.W.2d 534.

III

[¶8]   The Department argues it had authority under N.D.C.C. § 39-20-04.1 to suspend Meiers's driving privileges because the officer's certification of the test record and checklist is not a basic and mandatory provision of the law that must be met for the Department to have authority to suspend a person's driving privileges.

A

[¶9]   In *Kirkpatrick*, 2023 ND 190, ¶¶ 10-12, this Court explained the difference between "jurisdiction" and "authority." We explained the Department has jurisdiction to suspend a person's driving privileges under N.D.C.C. ch. 39-20. *Id.* ¶¶ 12-13. However, it only has authority to suspend a person's driving privileges when its jurisdiction is invoked by basic and mandatory statutory requirements being met. *Id.*

[¶10] Over the years, this Court has repeatedly used the phrase "basic and mandatory provisions" or "basic and mandatory statutory requirements" when determining whether the Department has authority to suspend driving privileges. *See, e.g.*, *Christiansen v. Panos*, 2022 ND 27, ¶ 7, 969 N.W.2d 709 ("This Court has addressed questions related to the Department's authority to suspend driving privileges by analyzing whether the statutory provisions at issue were 'basic and mandatory.'"); *Haynes v. Dir., Dep't of Transp.*, 2014 ND 161, ¶ 8, 851 N.W.2d 172 ("The Department's authority to revoke or suspend a person's driving privileges is given by statute, and the Department must meet the basic

3

and mandatory provisions of the statute to have authority to revoke or suspend a person's driving privileges."); *Schock*, 2012 ND 77, ¶ 33 ("[W]e have held the Department's failure to strictly comply with other statutory provisions did not deprive the Department of authority to suspend driving privileges when the statutory provision was not a basic and mandatory provision requiring compliance."); *Aamodt v. N.D. Dep't of Transp.*, 2004 ND 134, ¶ 15, 682 N.W.2d 308 ("The Department's authority to suspend a person's license is given by statute and is dependent upon the terms of the statute. The Department must meet the basic and mandatory provisions of the statute to have authority to suspend a person's driving privileges."). Today we clarify what we mean by "basic and mandatory provisions." In doing so, we do not decide whether past cases meet the standard articulated today. Still, we discuss several cases to show how the case law has developed and how the language and analysis in those cases support the standard articulated today.

B

[¶11] This Court has held "N.D.C.C. § 39-20-04.1 provides the Department with authority to suspend a license." *Kirkpatrick*, 2023 ND 190, ¶ 13; *see also Christiansen*, 2022 ND 27, ¶ 14 (stating "N.D.C.C. § 39-20-03.1 provides procedures for law enforcement to follow and N.D.C.C. § 39-20-04.1 provides the Department's authority to sanction a driver"). Section 39-20-04.1 applies when the driver submits to a chemical test. Thus, when the driver is tested, the Department must meet the mandatory provisions of section 39-20-04.1 to have authority to suspend the person's driving privileges.[1]

[¶12] Unlike N.D.C.C. § 39-20-04.1, N.D.C.C. § 39-20-03.1 does not identify conditions that must be met for the Department to have authority to suspend

---

[1] Section 39-20-04, N.D.C.C, provides the Department's authority to revoke an individual's driving privileges for refusal to submit to testing. *Whitecalfe v. N.D. Dep't of Transp.*, 2007 ND 32, ¶ 8, 727 N.W.2d 779 (stating if "the basic and mandatory provisions of [section 39-20-04] have not been met, the Department lacks authority to revoke an individual's driving privileges" for refusal to submit to testing).

driving privileges. Rather, section 39-20-03.1 "lists procedures law enforcement must follow after a person has tested over the legal limit for driving under the influence." *Christiansen*, 2022 ND 27, ¶ 13. Although section 39-20-03.1 does not provide the Department's authority to suspend a license, this Court has recognized the relationship between section 39-20-03.1 and section 39-20-04.1. We have explained "[t]he requirements in N.D.C.C. § 39-20-04.1(1) mirror some requirements of N.D.C.C. § 39-20-03.1(4)." *Id.* ¶ 16.

[¶13] Whether a statutory provision in N.D.C.C. ch. 39-20 is basic and mandatory depends on whether the provision mirrors a provision of the statute providing the Department authority to suspend or revoke a person's driving privileges. Thus, if requirements in N.D.C.C. § 39-20-03.1(4) mirror requirements of N.D.C.C. § 39-20-04.1(1), those requirements are basic and mandatory and must be met for the Department to have authority to suspend a person's driving privileges. Correspondingly, requirements in section 39-20-03.1(4) that do not mirror requirements of section 39-20-04.1(1) need not be met for the Department to have authority to suspend a person's driving privileges. A statutory provision mirrors a requirement of section 39-20-04.1(1) if the provision provides information important to the Department in determining its authority to suspend a license. Thus, provisions are not basic and mandatory when they "are not important in determining whether a driver's license can be suspended, and they are not considered by the Department when making its determination." *Aamodt*, 2004 ND 134, ¶ 22; *see also Christiansen*, 2022 ND 27, ¶ 7 ("The 'basic and mandatory' rationale has been used to excuse strict compliance with statutory provisions not essential to the Department when making its license suspension decision.").

C

[¶14] Section 39-20-04.1(1), N.D.C.C., provides, in relevant part:

> After the receipt of the certified report of a law enforcement officer and if no written request for hearing has been received from the arrested person under section 39-20-05, or if that hearing is requested and the findings, conclusion, and decision from the hearing confirm that the law enforcement officer had reasonable

grounds to arrest the person and test results show that the arrested person was driving or in physical control of a vehicle while having an alcohol concentration of at least eight one-hundredths of one percent by weight or, with respect to a person under twenty-one years of age, an alcohol concentration of at least two one-hundredths of one percent by weight at the time of the performance of a test within two hours after driving or being in physical control of a motor vehicle, the director shall suspend the person's driving privileges[.]

[¶15] The word "after" conditions the Department's authority to suspend a person's driving privileges on certain circumstances being met. *See Weber v. N. Loup River Pub. Power and Irrigation Dist.*, 288 Neb. 959, 966-67, 854 N.W.2d 263 (noting the term "after" evidences a provision is conditional); *Dolan v. Kemper Indep. Ins.*, 237 Md. App. 610, 623-24, 187 A.3d 741 (2018) (stating "after" creates a condition similar to "when," "as soon as," and "until"); *see also The American Heritage Dictionary* 30 (5th ed. 2018) (defining "after" as "[s]ubsequent in time to"); *Merriam-Webster's Dictionary* 23 (11th ed. 2005) (defining "after" as "subsequently to the time when"); *New Oxford American Dictionary* 28 (3d ed. 2010) (defining "after" as "during the period of time following"). When a driver who consented to a test requests a hearing, the required circumstances include (1) the Department's "receipt of the certified report of a law enforcement officer," (2) the Department affording the driver a hearing, (3) a decision confirming "the law enforcement officer had reasonable grounds to arrest the person," and (4) a decision confirming the "test results show that the arrested person was driving or in physical control of a vehicle" while the person's alcohol concentration was over the legal limit. N.D.C.C. § 39-20-04.1(1); *see Christiansen*, 2022 ND 27, ¶ 15 ("Before the Department can suspend a person's driving privileges when he or she has requested an administrative hearing, the Department must receive the certified report from law enforcement, confirm law enforcement had reasonable grounds to arrest the person and confirm test results show that person's alcohol concentration was over the legal limit within two hours of driving or being in control of a vehicle.").

1

[¶16] The first condition in N.D.C.C. § 39-20-04.1(1) that must be met for the Department to have authority to suspend a person's driving privileges is that the Department receive "the certified report of a law enforcement officer." Section 39-20-03.1(4) mirrors this condition by mandating the officer "forward to the director a certified written report in the form required by the director." Without the officer forwarding to the director the certified report, the Department cannot receive the certified report. Thus, "it is important to the Department that the provision be followed" or a "predicate" to the Department's authority to suspend the person's driving privileges has not been met. *Aamodt*, 2004 ND 134, ¶ 23. *Christiansen*, 2022 ND 27, and *Schwind v. Director, North Dakota Department of Transportation*, 462 N.W.2d 147 (N.D. 1990), illustrate the distinction between a "predicate" to the Department's authority to suspend a person's driving privileges and a statutory provision that does not affect the Department's authority to suspend a person's driving privileges if not met.

[¶17] In *Christiansen*, the officer did not forward the certified report to the Department within five days as required by N.D.C.C. § 39-20-03.1(4). 2022 ND 27, ¶ 3. Comparing the five-day requirement in section 39-20-03.1(4) to N.D.C.C. § 39-20-04.1(1), this Court explained that section 39-20-04.1(1) "does not control or even mention the timing of law enforcement forwarding the report, nor the timing of the Department receiving the report (other than before suspension of driving privileges)." *Id.* ¶ 18. Because the five-day requirement in section 39-20-03.1(4) did not mirror section 39-20-04.1(1), we held "the five-day directive to law enforcement in N.D.C.C. § 39-20-03.1(4) does not affect the Department's authority to suspend driving privileges under N.D.C.C. § 39-20-04.1." *Id.* In other words, whether the five-day requirement is met is "not important in determining whether a driver's license can be suspended, and [it is] not considered by the Department when making its determination." *Aamodt*, 2004 ND 134, ¶ 22; *cf. Schock*, 2012 ND 77, ¶ 37 ("The statutory language in N.D.C.C. § 39-20-05(5) is not basic and mandatory, because the hearing officer's action in mailing the decision three days after the administrative hearing did not affect whether there were reasonable grounds to believe Schock drove or was in actual physical control of a vehicle while under the influence of alcohol, whether the police officer properly tested Schock, or whether Schock's blood-alcohol level exceeded

the legal limit."); *Erickson v. Dir., N.D. Dep't of Transp.*, 507 N.W.2d 537 (N.D. 1993) (holding failure to forward a copy of analytical report within five days as required by N.D.C.C. § 39-20-03.2(3) did not deprive the Department of authority).

[¶18] In *Schwind*, the officer forwarded the certified report to the Department but not the operator's license. 462 N.W.2d at 148-49. Although N.D.C.C. § 39-20-03.1(2) "requires the officer to forward the operator's license," we held the officer's failure to do so did not deprive the Department of authority to suspend the driver's driving privileges. *Id.* at 150. The requirement in section 39-20-03.1(2) that the officer forward the operator's license does not mirror any predicate to the Department's authority in N.D.C.C. § 39-20-04.1(1); in other words, section 39-20-04.1 does not require the Department receive the operator's license, and whether the officer forwarded to the Department the operator's license is unimportant to the Department's decision whether to suspend the operator's driving privileges. Thus, the directive that the officer forward to the Department the operator's license is not a basic and mandatory provision.

2

[¶19] The second condition in N.D.C.C. § 39-20-04.1(1) that must be met for the Department to have authority to suspend a person's driving privileges is that the Department afford the driver a hearing if requested under N.D.C.C. § 39-20-05. Paralleling section 39-20-04.1(1), section 39-20-05(1) provides:

> Before issuing an order of suspension, revocation, or denial under section 39-20-04 or 39-20-04.1, the director shall afford that person an opportunity for a hearing if the person mails or communicates by other means authorized by the director a request for the hearing to the director within ten days after the date of issuance of the temporary operator's permit.

[¶20] Multiple provisions of N.D.C.C. ch. 39-20 require the officer to issue to the driver a temporary operator's permit. *See* N.D.C.C. §§ 39-20-03.1(1), 39-20-03.2(1), 39-20-04(1). The requirement the officer issue to the driver a temporary operator's permit is directly connected to the requirement in N.D.C.C. § 39-20-04.1(1) that the Department afford the driver a hearing.

8

[¶21] "The temporary operator's permit serves as the director's official notification to the person of the director's intent to revoke, suspend, or deny driving privileges in this state." N.D.C.C. § 39-20-03.1(1); *cf.* N.D.C.C. § 39-20-04(1) ("The temporary operator's permit serves as the director's official notification to the person of the director's intent to revoke driving privileges in this state and of the hearing procedures under this chapter."). Thus, absent the officer issuing to the driver a temporary operator's permit, the driver lacks notice of the right to request a hearing and has not been afforded the opportunity for a hearing, depriving the Department of authority to suspend the driver's driving privileges. N.D. Admin. Code § 37-03-03-12 ("The temporary operator's permit issued by the law enforcement officer, containing a notice that motor vehicle operating privileges will be revoked or suspended and of an opportunity for a hearing, shall constitute the written notice required by North Dakota Century Code section 39-20-05 from the director."). That is why we held in *Ike v. Director, North Dakota Department of Transportation*, 2008 ND 85, ¶ 8, 748 N.W.2d 692, that "the issuance of a temporary operator's permit to a driver is a basic and mandatory requirement of N.D.C.C. § 39-20-03.1." *See also Haynes,* 2014 ND 161, ¶ 13 ("The issuance of the temporary permit is vital to revocation proceedings, and therefore the Department does not have authority to revoke a person's driving privileges if the person is not issued a temporary operator's permit."). But *who* issues the temporary operator's permit is not a basic and mandatory requirement of section 39-20-03.1 because who issues the permit has no bearing on the driver's opportunity to request a hearing. *Ike*, at ¶ 10. *When* the officer issues the temporary operator's permit is also not a basic and mandatory provision because the date of issuance does not impact the driver's opportunity to request a hearing. *See* N.D.C.C. § 39-20-05(1) (request for a hearing must be made within ten days after the date of issuance of the temporary operator's permit); *see also Haynes*, at ¶ 10 (holding delay in issuing temporary operator's permit to nonresident motorist did not impact Department's authority to revoke motorist's driving privileges); *Samdahl v. N.D. Dep't of Transp. Dir.*, 518 N.W.2d 714, 717 (N.D. 1994) (holding unexplained delay in issuing notice of intent to suspend driving privileges did not deprive the Department of authority).

3

[¶22] If the driver requests a hearing and the hearing is held, N.D.C.C. § 39-20-04.1(1) requires the "findings, conclusion, and decision from the hearing confirm that the law enforcement officer had reasonable grounds to arrest the person[.]" Paralleling this requirement, N.D.C.C. § 39-20-05(2) provides the scope of the hearing may only cover four issues, one being "whether the arresting officer had reasonable grounds to believe the individual had been driving or was in actual physical control of a vehicle" while having an alcohol concentration above the applicable legal limit. Thus, the Department's authority to suspend a person's driving privileges is predicated on the officer having had reasonable grounds to arrest the person.

[¶23] Section 39-20-03.1(4), N.D.C.C., requires the certified report "show that the officer had reasonable grounds" to arrest the driver for driving or being in actual physical control of a motor vehicle while under the influence. This information is "important in determining whether a driver's license can be suspended, and [is] considered by the Department when making its determination." *Aamodt*, 2004 ND 134, ¶ 22. Thus, it is a basic and mandatory provision. *Id.* ¶ 1 (holding "the provision in N.D.C.C. § 39-20-03.1(3) requiring an officer to issue a certified written report showing reasonable grounds to believe the person was in actual physical control of a motor vehicle while under the influence of alcohol is a basic and mandatory provision").

4

[¶24] Under N.D.C.C. § 39-20-04.1(1), the decision after a hearing must confirm the "test results show that the arrested person was driving or in physical control of a vehicle while having an alcohol concentration" above the legal limit. Paralleling this requirement, N.D.C.C. § 39-20-05(2) provides the scope of the hearing includes "whether the individual was tested in accordance with section 39-20-01 and, if applicable, section 39-20-02," and "whether the test results show the individual had an alcohol concentration" above the legal limit. The Department lacks authority to suspend an individual's driving privileges if the individual was not tested in accordance with the law and the test results do not show the individual had an alcohol concentration above the legal limit.

10

[¶25] Section 39-20-03.1(4), N.D.C.C., requires the officer forward to the Department "a certified copy of the operational checklist and test records of a breath test and a copy of the certified copy of the analytical report for a blood or urine test for all tests administered at the direction of the officer." The requirement the officer forward certain documents to the Department is inextricably intertwined with the requirement the Department find the test was administered in accordance with the law and the test results show the individual had an alcohol concentration above the legal limit. The documents are "considered by the Department when making its determination" and are critically important to the Department's determination "whether a driver's license can be suspended[.]" *Aamodt*, 2004 ND 134, ¶ 22. Thus, that the officer forward copies of certain documents to the Department is a basic and mandatory provision.

[¶26] Multiple cases hold that portions of N.D.C.C. § 39-20-03.1(4)'s requirement the officer forward to the Department "a certified copy of the operational checklist and test records of a breath test and a copy of the certified copy of the analytical report for a blood or urine test for all tests administered at the direction of the officer" is a basic and mandatory provision. Yet those cases also demonstrate strict compliance with the provision is only required when the information is necessary for the Department to make its license suspension decision. Like other provisions in section 39-20-03.1(4), provisions of the last sentence in section 39-20-03.1(4) only impact the Department's authority to sanction a driver when they mirror or implement provisions in N.D.C.C. § 39-20-04.1 that impact the Department's authority to sanction a driver. Several cases have addressed which aspects of this last sentence in section 39-20-03.1(4) are basic and mandatory.

[¶27] The last sentence in N.D.C.C. § 39-20-03.1(4) has two requirements based on the test or tests administered. First, the sentence requires the officer forward to the Department "a certified copy of the operational checklist and test records of a *breath test*[.]" N.D.C.C. § 39-20-03.1(4) (emphasis added). Second, the sentence requires the officer forward to the Department "a copy of the certified copy of the analytical report for a *blood or urine* test[.]" *Id.* (emphasis added). The test or tests administered at the officer's direction determines what the officer

11

must forward to the Department. *See Wingerter v. N.D. Dep't of Transp.*, 530 N.W.2d 362, 365 (N.D. 1995) ("Section 39-20-03.1(3) distinguishes between breath tests on the one hand, and blood . . . and urine tests on the other.").

[¶28] In *Bosch v. Moore*, the driver was arrested for driving under the influence, and the officer conducted a breath test and a urine test. 517 N.W.2d 412, 412 (N.D. 1994). The officer discarded the breath test results because the results were invalid due to a deviation of more than 0.02%. *Id*. The officer forwarded the urine test to the Department. *Id*. This Court held N.D.C.C. § 39-20-03.1(4) required the officer to provide the Department with "all tests" for the Department to retain its authority. *Id*. at 413. We emphasized that section 39-20-03.1(4)'s "command that all tests be forwarded to [the Department] is basic and mandatory. It precludes the officer's exercise of choice and requires the transmittal of 'all tests.'" *Id.* The requirement that "all tests" be forwarded to the Department is basic and mandatory because the Department should consider "all tests" when making its decision and determining its authority to suspend a driver's license. *See* N.D.C.C. § 39-20-04.1(1).

[¶29] In *Koenig*, the officer conducted two breath tests. 2005 ND 95, ¶ 4. The driver put chewing tobacco in his mouth between the first and second breath samples of the first test, which made it impossible to obtain an accurate reading. *Id*. ¶ 3. Moreover, because of a printer malfunction, the officer could not print a record of the first test. *Id.* Therefore, the officer could not forward the results of the first test to the Department. *Id*. The officer conducted a second breath test and forwarded the results of that test to the Department. *Id*. This Court noted the officer "did not discard any test results or otherwise make a judgment on the validity of any tests administered" to the driver. *Id*. ¶ 14. Rather, the officer forwarded "[e]very available record of test results" to the Department. *Id*. Thus, the officer complied with N.D.C.C. § 39-20-03.1(4) and the Department had authority to suspend the driver's driving privileges. *See id*. ¶ 16. In *Koenig*, the officer complied with the statute and did not deprive the Department of any available information that could help it make its determination.

[¶30] *Kirkpatrick* concerned both breath tests and a blood test. 2023 ND 190, ¶¶ 2-3. "[T]he officer submitted a certified report to the Department, showing the

12

officer had reasonable grounds to believe Kirkpatrick was driving under the influence, showing Kirkpatrick was legally arrested, documenting that the officer performed two breath tests on Kirkpatrick, and providing the breath test results." *Id.* ¶ 3. However, the officer did not forward the analytical blood report to the Department. *Id.* ¶ 4. We concluded the officer's failure to forward to the Department the result of a blood test taken at the officer's direction deprived the Department of authority to suspend the driver's license. *Id.* ¶ 21; *cf. Wingerter*, 530 N.W.2d at 365 (holding Department had authority when officer forwarded certified copy of analytical report for blood). That is because N.D.C.C. § 39-20-03.1(4)'s directive the officer forward to the Department the analytical report for a blood test provides information "essential to the Department when making its license suspension decision." *Christiansen*, 2022 ND 27, ¶ 7.

[¶31] But in *Keller v. North Dakota Department of Transportation*, we held an officer's failure to forward to the Department a drug analytical report did not deprive the Department of authority to suspend the driver's license. 2015 ND 9, ¶ 13, 858 N.W.2d 316. In doing so, we emphasized that "N.D.C.C. § 39-20-04.1 only allows for an administrative sanction by the director based on test results for alcohol concentration, with no reference made to a drug test." *Id.* ¶ 9. We noted the limited issues the administrative hearing officer considers under N.D.C.C. § 39-20-05(2) include whether "the test results indicate the driver's *alcohol* concentration was at least eight one-hundredths of one percent by weight." *Id.* Because the Department's authority to suspend a driver's license is based on alcohol concentration, and "[o]nly alcohol tests show alcohol concentration," "there would be no need for the director to receive the results of the drug test[.]" *Id.* ¶ 12. We concluded, "it would make no sense to require the forwarding of drug tests to the director, when the director would have no authority to sanction the driver based on the results of the test under N.D.C.C. § 39-20-04.1." *Id.* In the language of *Aamodt*, drug test results "are not important in determining whether a driver's license can be suspended, and they are not considered by the Department when making its determination." 2004 ND 134, ¶ 22. Thus, even if "all tests" in N.D.C.C. § 39-20-03.1(4) includes drug tests, forwarding drug tests would not be a basic and mandatory provision.

13

[¶32] In *Maher v. North Dakota Department of Transportation*, we held an officer's failure to forward an empty blood collection kit did not divest the Department of authority to suspend the driver's license. 539 N.W.2d 300, 302 (N.D. 1995). We noted N.D.C.C. § 39-20-03.1(4) "requires the officer to 'forward to the director . . . a copy of the certified copy of the analytical report for a blood [test],'" that "no blood had entered the first vacutainer tube[,]" and that "[i]t is impossible to obtain the analytical report of a blood test from a vacutainer tube without any blood in it." *Id.* This Court's holding acknowledged the empty blood collection kit did not provide information "important in determining whether a driver's license can be suspended" and would "not [be] considered by the Department when making its determination." *Aamodt*, 2004 ND 134, ¶ 22.

[¶33] In *Larson v. Moore*, however, this Court held the Department did not have authority to suspend the driver's license when the officer discarded a blood sample taken from the driver. 1997 ND 227, ¶ 10, 571 N.W.2d 151. We noted N.D.C.C. § 39-20-03.1(3) "requires an analytical report be made and forwarded for each and every test administered." *Id.* ¶ 9. "In this case, two samples were taken." *Id.* ¶ 10. "[T]he taking of the blood sample is part of the test process[,] . . . and there [was] no dispute some blood was collected during the first attempt." *Id.* Because the officer discarded the first sample, "no analytical report was made." *Id.* Thus, unlike in *Maher*, the blood sample could provide important information "in determining whether a driver's license can be suspended" and would be "considered by the Department when making its determination." *Aamodt*, 2004 ND 134, ¶ 22. Therefore, "[t]he officer's failure to submit the first sample for testing to obtain an analytical report as required by N.D.C.C. § 39-20-03.1(3) deprived the Department of authority to suspend Larson's driver's license." *Larson*, at ¶ 10.

D

[¶34] Section 39-20-03.1(4), N.D.C.C., requires the officer forward to the Department "a certified copy of the operational checklist and test records of a breath test[.]" It is undisputed the Department did not receive a "certified" copy of Meier's test record and checklist. The legal issue is whether the requirement

14

the test record and checklist be certified is a basic and mandatory requirement that impacts the Department's authority under N.D.C.C. § 39-20-04.1.

[¶35] The requirement officers forward to the Department a copy of the test record and checklist of every breath test is inextricably intertwined with the requirement that the Department find the test was administered in accordance with the law and that the test results show the individual had an alcohol concentration above the legal limit. The information in those documents is "considered by the Department when making its determination" and is important to the Department's determination "whether a driver's license can be suspended[.]" *Aamodt*, 2004 ND 134, ¶ 22. But the requirement the document be certified does not parallel any requirement in N.D.C.C. § 39-20-04.1. Rather, the certification requirement is for evidentiary purposes, which can be accomplished through other means.

[¶36] Section 39-20-04.1(1), N.D.C.C., requires the Department receive "the certified report of a law enforcement officer" for it to have authority to suspend a driver's driving privileges. Section 39-20-04.1(1) does not require the Department receive a certified copy of the test record and checklist for it to have authority to suspend a driver's driving privileges. The language in N.D.C.C. § 39-20-03.1(4) makes it clear the report and the test record and checklist are separate and distinct documents. Section 39-20-03.1(4) provides the officer must forward the report to the Department "within five days of the issuance of the temporary operator's permit[.]" No such requirement exists regarding the test record and checklist. Moreover, section 39-20-03.1(4) provides the officer must forward to the Department the test record and checklist "[i]n addition to" the report. The phrase "in addition to" demonstrates the report and the test record and checklist are separate and distinct documents. *See The American Heritage Dictionary* 19 (5th ed. 2018) (defining "in addition to" as "[o]ver and above; besides"); *Merriam-Webster's Dictionary* 14 (11th ed. 2005) (defining "in addition to" as "combined or associated with" and "besides"); *New Oxford American Dictionary* 18 (3d ed. 2010) (defining "in addition" "as an extra person, thing, or circumstance"); *Heritage Farms, Inc. v. Markel Ins.*, 2009 WI 27, ¶ 19, 316 Wis.2d 47, 762 N.W.2d 652 (explaining "in addition to" means "besides"); *cf. Tergesen v. Nelson Homes, Inc.*, 2022 ND 1, ¶ 11, 969 N.W.2d 150 ("The word 'and' is

'conjunctive in nature and ordinarily means in addition to.'" (quoting *Gadeco, LLC v. Indus. Comm'n of State*, 2013 ND 72, ¶ 15, 830 N.W.2d 535)). Section 39-20-04.1(1) only requires the Department receive "the certified report" for it to have authority to suspend a driver's driving privileges, not the certified test record and checklist. The requirement in N.D.C.C. § 39-20-03.1(4) that the officer forward to the Department "a certified copy" of the test record and checklist does *not* mirror any requirement in N.D.C.C. § 39-20-04.1(1). Thus, the requirement is not a basic and mandatory provision that must be followed for the Department to have authority to suspend a driver's driving privileges.

[¶37] It is also the substance of the test record and checklist, not whether it is certified, that the Department considers when determining whether it has authority to suspend a driver's driving privileges. If the test record and checklist is admissible, the Department may consider it when making its determination.

[¶38] "Section 39-20-07, N.D.C.C., governs the admission of a chemical test result and allows the use of certified documents to establish the evidentiary foundation for the result." *Ell v. Dir., N.D. Dep't of Transp.*, 2016 ND 164, ¶ 17, 883 N.W.2d 464. Section 39-20-07(5) eases the burden in laying the evidentiary foundation for a chemical test result. *Id.* ¶ 18. Section 39-20-07(5) "governs the admissibility of Intoxilyzer test results." *Buchholz v. N.D. Dep't of Transp.*, 2002 ND 23, ¶ 7, 639 N.W.2d 490. "One of these foundational elements requires the breath test to have been 'fairly administered.'" *State v. Blaskowski*, 2019 ND 192, ¶ 5, 931 N.W.2d 226. "To facilitate compliance with N.D.C.C. § 39-20-07 and the foundational element requiring a test be fairly administered, the state toxicologist has established approved methods for administering chemical breath tests." *Id.* ¶ 6. A certified copy of the test record and checklist is a foundational element for use of the "evidentiary shortcut" provided by section 39-20-07. *Id.* ¶ 8. Although section 39-20-07 provides a "statutory shortcut," it does not prevent the Department from showing fair administration of the test through other evidence. *State v. Vannett*, 2021 ND 225, ¶ 19, 967 N.W.2d 786.

[¶39] "The admissibility of evidence at an adjudicative hearing before an administrative agency is governed by the North Dakota Rules of Evidence." *Ouradnik v. Henke*, 2020 ND 39, ¶ 19, 938 N.W.2d 392 (quoting *May v.*

16

*Sprynczynatyk*, 2005 ND 76, ¶ 24, 695 N.W.2d 196). "Generally, before documentary evidence is admissible it must be authenticated." *Frost v. N.D. Dep't of Transp.*, 487 N.W.2d 6, 8 (N.D. 1992). "Rule 901, N.D.R.Ev., provides for methods of authentication of evidence." *State v. Cook*, 2018 ND 100, ¶ 14, 910 N.W.2d 179. Under Rule 901(a), "[a]ll that authentication requires is that the party offering the evidence show that the document is what he claims it to be[.]" *R & D Amusement Corp. v. Christianson*, 392 N.W.2d 385, 386 (N.D. 1986). A party can authenticate or identify an item of evidence through multiple means. *See* N.D.R.Ev. 901(b). Rule 901(b) "places no limitations upon the number of methods of proving authentication." *Farmer's Union Oil Co. of Dickinson v. Wood*, 301 N.W.2d 129, 136 (N.D. 1980); *see also State v. Gackle*, 2015 ND 271, ¶ 13, 871 N.W.2d 589 ("Under N.D.R.Ev. 901, evidence may be authenticated by the testimony of a witness with knowledge."); *State v. Haugen*, 392 N.W.2d 799, 802 (N.D. 1986) ("It is uniformly recognized that a document may be authenticated by circumstantial evidence, such as the events preceding, surrounding, and following the transmission of a writing."). Thus, if the test record and checklist does not satisfy the "statutory shortcut" because it is not certified, it is still admissible if the Department "produce[s] evidence sufficient to support a finding" that it is what the Department claims it is. N.D.R.Ev. 901(a); *see also Ouradnik*, at ¶ 25 ("The arresting officer's testimony provided sufficient foundation and authentication to admit the Intoxilyzer Test Record and Checklist without the necessity of certification by the NDDOT."); *State v. Schwalk*, 430 N.W.2d 317, 323 (N.D. 1988) (concluding absent written certification the state toxicologist's directives for sample collection have been followed, the State must establish fair administration of the test by other evidence).

[¶40] Section 39-20-04.1, N.D.C.C., does not require the Department receive a certified copy of a breath test result and checklist to have authority to suspend a person's driving privileges. Thus, the requirement in N.D.C.C. § 39-20-03.1(4) that the officer forward to the Department "a certified copy" of the test record and checklist is not a basic and mandatory provision that must be followed for the Department to have authority to suspend a driver's driving privileges. The certification requirement is for evidentiary purposes, which can be accomplished through other means.

17

[¶41] In conclusion, N.D.C.C. § 39-20-04.1 provides the Department with authority to suspend a driver's driving privileges. Section 39-20-03.1(4), N.D.C.C., lists procedures an officer must follow when a person has tested over the legal limit for driving under the influence. An officer's non-compliance with a provision of section 39-20-03.1(4) does not impact the Department's authority to suspend a driver's driving privileges unless the provision is basic and mandatory. To be basic and mandatory, the provision must mirror a provision of section 39-20-04.1(1). A provision of section 39-20-03.1(4) mirrors a provision of section 39-20-04.1(1) when the officer's compliance with the provision provides to the Department information important to the Department in determining its authority to suspend a license. The requirement in section 39-20-03.1(4) that the test record and checklist be "certified" is not a basic and mandatory provision impacting the Department's authority to suspend a driver's driving privileges.

IV

[¶42] We reverse the district court's judgment and reinstate the Department's decision suspending Meiers's driving privileges.

[¶43] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr