# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

## 2024 ND 42

---

State of North Dakota,

Plaintiff and Appellee

v.

Kimberly Ann Henderson,

Defendant and Appellant

---

## No. 20230253

---

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Robin A. Schmidt, Judge.

REVERSED.

Opinion of the Court by Tufte, Justice.

Nathan K. Madden, Assistant State's Attorney, Williston, N.D., for plaintiff and appellee; submitted on brief.

Christopher K. Votava, Williston, N.D., for defendant and appellant; submitted on brief.

# State v. Henderson
## No. 20230253

**Tufte, Justice.**

[¶1]   Kimberly Ann Henderson appeals from a criminal judgment entered after a jury convicted her of exploitation of a vulnerable adult and attempted theft. She argues the district court abused its discretion by admitting several trial exhibits because the exhibits were not properly authenticated under N.D.R.Ev. 901 and are inadmissible hearsay lacking sufficient foundation as records of regularly conducted activity under N.D.R.Ev. 803(6). We reverse the judgment.

I

[¶2]   From August to September 2022, Henderson worked for Home Helpers, an agency offering assistance to elderly people with chores, transportation, and other tasks. During that time, she was assigned to Mr. and Mrs. Cooper and gained access to their financial information. The State alleged Henderson used the Coopers' financial accounts to pay her own bills and make personal purchases.

[¶3]   The State charged Henderson with exploitation of an eligible adult, a Class A Felony, under N.D.C.C. § 12.1-31-07.1(2)(a), specifically alleging the value of the funds exceeds $50,000, and criminal attempt of theft of property, a Class B Felony, under N.D.C.C. § 12.1-23-05(2), for theft exceeding $10,000 but less than $50,000.

[¶4]   At trial, the State presented testimony from four witnesses and submitted thirteen exhibits, including financial documents, receipts, an eviction notice, surveillance photos from multiple businesses, and a video of an interview with Henderson. Henderson objected to the admissibility of 12 exhibits, namely exhibits 1–2 and 4–13. The district court overruled the objections and admitted the exhibits. The jury convicted Henderson on both counts. Henderson appeals.

## II

[¶5]   Henderson argues the district court abused its discretion by admitting exhibits 1 and 4–13. She argues the exhibits were not properly authenticated under N.D.R.Ev. 901 and are inadmissible hearsay not established as records of regularly conducted activity under N.D.R.Ev. 803(6).

[¶6]   "A district court has broad discretion in evidentiary matters, and we will not overturn a district court's decision to admit or exclude evidence unless the court abused its discretion." *State v. Sanchez*, 2023 ND 106, ¶ 5, 991 N.W.2d 71 (citing *State v. Azure*, 2017 ND 195, ¶ 6, 899 N.W.2d 294). "A district court abuses its discretion in evidentiary rulings when it acts arbitrarily, capriciously, or unreasonably, or it misinterprets or misapplies the law." *State v. Vickerman*, 2022 ND 184, ¶ 8, 981 N.W.2d 881 (citation omitted).

[¶7]   "A party objecting to the introduction of evidence must state the specific ground of objection, if the specific ground is not apparent from the context." *State v. Thomas*, 2022 ND 126, ¶ 17, 975 N.W.2d 562 (citing N.D.R.Ev. 103(a)(1)(B)). "A party must make a specific objection to evidence at the time it is offered for admission into evidence to give the opposing party an opportunity to argue the objection and attempt to cure the defective foundation, and to give the trial court an opportunity to fully understand the objection and appropriately rule on it." *Id.* (quoting *May v. Sprynczynatyk*, 2005 ND 76, ¶ 26, 695 N.W.2d 196). "An objection indicating the specific evidence rules by number supporting the grounds for the objection is sufficient to satisfy N.D.R.Ev. 103(a)(1)(B)." *Id.*

## III

[¶8]  Henderson argues exhibit 1, a packet of financial documents, is inadmissible "due to lack of foundation, explanation, and that the contents of the documents were unknown." She cites N.D.R.Ev. 901, 1001, and 1002 regarding authentication.

[¶9]   "Before documentary evidence is admissible, it must be authenticated." *Christianson v. Henke*, 2020 ND 76, ¶ 8, 941 N.W.2d 529 (citations omitted).

Authentication requires evidence sufficient to support a finding that an item of evidence is what the proponent claims it is. N.D.R.Ev. 901(a); *see also State v. Hirschkorn*, 2020 ND 268, ¶ 9, 952 N.W.2d 225. Rule 901(b)(1) and (4), N.D.R.Ev., provides examples of authentication, including testimony of a witness with knowledge "that an item is what it is claimed to be," and "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *Hirschkorn*, at ¶ 9; *see also State v. Thompson*, 2010 ND 10, ¶¶ 21-22, 777 N.W.2d 617. "[T]he proponent of offered evidence need not rule out all possibilities inconsistent with authenticity or conclusively prove that evidence is what it purports to be; rather, the proponent must provide proof sufficient for a reasonable juror to find the evidence is what it purports to be." *Thompson*, at ¶ 21 (citations omitted).

[¶10] The State offered several financial documents as a single item of evidence marked exhibit 1 during a detective's testimony. He explained: "[Mr. Cooper] gave me some Gate City banking documents. There was some copies of some checks and other documents from the bank, showing what money was all missing from his account that he couldn't account for." The detective testified exhibit 1 fairly and accurately represented the documents provided by Mr. Cooper. The State moved to admit the exhibits. Henderson objected:

> [DEFENSE COUNSEL]: I would object, Your Honor. We don't have foundation. There's been no explanation of exactly what they are, the contents of a large part of them. I don't know if we want to discuss this outside the presence of the jury, maybe, but I do object to this exhibit coming in, Your Honor.
>
> THE COURT: Any response?
>
> [THE STATE]: Your Honor, this witness met with the victim at the law enforcement center. The documents, as far as a chain-of-custody issue is concerned, they came directly from the victim, who had already done the heavy lifting, obtaining the records from his banking institution and forwarding it to law enforcement for investigation. There's no prohibition on — with regard to a foundational — the foundational argument raised by opposing

3

counsel with regard to the transition from Mr. Cooper to law enforcement.

THE COURT: Overruled. I'm receiving Exhibit 1.

Later, outside the presence of the jury, the discussion continued:

[DEFENSE COUNSEL]: That, to my understanding, is a packet of all of the checks, all of the affidavits of forgery; they weren't all testified to by either his banker or Mr. Cooper. So part of that was the personal knowledge. It wasn't just a small document of, oh, this is what I got for his personal knowledge, it was there was a lot that hadn't been testified to.

THE COURT: I'm glad you brought that up because I think that your objection goes more to weight and credibility than it does . . . foundation, but I didn't want to say that in front of the jury.

[¶11] Henderson argued the detective lacked personal knowledge of the contents of the documents—whereas, the banker or Mr. Cooper would have had the personal knowledge for foundation. The detective testified the documents were the same financial documents he received from Mr. Cooper. He described the documents as "some copies of some checks and other documents from the bank, showing what money was all missing from his account[.]" The court found this sufficient foundation, finding Henderson's argument goes to the weight of the evidence, not its admissibility. We disagree.

[¶12] Exhibit 1 contains affidavits of forgery, signed by Mr. Cooper and submitted to his bank, but they were offered through the detective assigned to the case. These documents were not authenticated by a witness with knowledge that these documents are what they purport be. The record lacks any information authenticating the contents of the documents admitted as exhibit 1. Henderson's objection is the only information on the record—"a packet of all of the checks, all of the affidavits of forgery"—but that is not evidence. Our review of the packet labeled as exhibit 1 shows 29 pages, including affidavits of forgery declared by Mr. Cooper and photographs underlying the alleged checks created as forgeries. The testimony does not describe the "appearance, contents, substance, internal patterns, or other

4

distinctive characteristics of the item." The detective's testimony that "those documents fairly and accurately represent the documents that were provided to [him] by Mr. Cooper" does not cure the foundational defects. The district court misapplied N.D.R.Ev. 901 and abused its discretion by admitting exhibit 1.

[¶13] A similar exchange occurred when the State offered exhibit 4, documents from the Hair Society Institute, which the State called an "invoice":

> [The detective:] Yes, I asked them if they had copies of those checks.
> [The State:] Okay. Did they provide — did a representative from the Hair Society provide you with any documentation as it relates to this investigation?
> A Yes. They had copies of both the checks that were passed on behalf of Ms. Henderson, and a copy of her North Dakota driver's license.
> Q Okay. Would you recognize the documentation that was supplied to you by the Hair Society if you were to see it again?
> A Yes, Sir.
> . . . .
> Q Okay. That document that I just handed to you, the front cover page indicates that it is from the Hair Society Institute.
> A Yes, Sir.
> Q Is that correct? Okay. And I want to direct your attention to the name underneath — there's a name underneath the heading of the Hair Society Institute —
> A Correct.
> Q — for the account holder at Hair Society. Who's [sic] name is on that?
> A It's Kimberly Henderson.

At that time, Henderson objected:

> Your Honor, I'm going to kind of repeat the objection that I've kind of been running. This, as it's coming through, I think could be considered hearsay, as it's statements from someone who's not here to testify, trying to prove that she had this account. And I, I guess, preemptively object to this document being considered or admitted.

[¶14] Outside the presence of the jury, Henderson elaborated on the objection to exhibit 4, the documents from the Hair Society Institute, as well as all the proposed exhibits the State anticipated entering, under Rules 901, 1001, and 1002, N.D.R.Ev., explaining the detective "doesn't have personal knowledge of their systems to create any of these documents, whether it's these exhibits or the other proposed exhibits, receipts, cameras, photos, videos, things like that. We don't have any personal knowledge on his part."

[¶15] The testimony does not specifically describe the contents of exhibit 4. Our examination of exhibit 4 shows the exhibit includes more than just an "invoice" as described by the State. The exhibit includes the Institute's enrollment agreement with Henderson, a history of payments, and a notice of insufficient funds and returned checks. The testimony does not tend to show the documents are what they purport to be. The testimony lacks authentication under Rule 901, N.D.R.Ev. The district court abused its discretion by admitting exhibit 4 without proper authentication.

IV

[¶16] Henderson also argued that many of the proposed exhibits, including exhibit 4, are inadmissible hearsay under N.D.R.Ev. 801. The State argued the exhibits are either receipts or business records admissible under Rule 803(6), N.D.R.Ev., as records of an act or event kept in the course of regularly conducted activity. The State argued the exhibits are authenticated either by the detective as "another qualified witness" or by compliance with Rule 902(11) or (12), N.D.R.Ev. Henderson responded further that the detective was not a qualified witness because he did not have personal knowledge whether the exhibits are an original or whether the exhibits reflect regularly conducted activity.

[¶17] The district court overruled the objection and received exhibit 4, stating, "I don't think the rules of evidence require us to divorce ourselves from commonsense, which is that receipts are kept in the course of business." Henderson then indicated the statement "same objection" would be used to preserve the issue for other exhibits.

6

[¶18] "Both N.D.C.C. § 31-08-01 and N.D.R.Ev. 803(6) provide an exception to the hearsay rule for records of regularly conducted business activity." *Pizza Corner, Inc. v. C.F.L. Transp., Inc.*, 2010 ND 243, ¶ 9, 792 N.W.2d 911. The district court admitted these exhibits under Rule 803(6) of the North Dakota Rules of Evidence, which provides a hearsay exception for:

> A record of an act, event, condition, opinion, or diagnosis if:
> (A) the record was made at or near the time by, or from information transmitted by, someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12); and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

N.D.R.Ev. 803(6). Because North Dakota adopted N.D.R.Ev. 803 from Fed.R.Evid. 803, we consider federal precedent persuasive. *Pizza Corner, Inc.,* 2010 ND 243, ¶ 9.

[¶19] "Rule 803(6) does not require that an employee from the company that created the record provide the foundation for a business record." *Command Ctr., Inc. v. Renewable Res., LLC*, 2021 ND 59, ¶ 32, 956 N.W.2d 755.

> Under N.D.R.Ev. 803(6), the foundation for admission of a business record can also be established using a qualified witness, and a qualified witness is someone who can explain the record keeping system of the business. The term qualified witness is generally given a very broad interpretation. The witness need only have enough familiarity with the record-keeping system of the business in question to explain how the record came into existence in the ordinary course of business. Courts have further held that a witness from one company can provide the foundation for a record

created by a third party if that company integrated the record into its own records and relied on it, and if the record meets the other requirements of Rule 803(6).

*Id.* at ¶ 33 (cleaned up).

[¶20] Although it is common knowledge that receipts are generally kept in the course of business, Rule 803(6)(D), N.D.R.Ev., requires the conditions underlying the exception in Rule 803(6), including that the records are kept in the regular course of business, be shown by testimony of the custodian or another qualified witness, or by certification under Rule 902, N.D.R.Ev. "Receipts" are not listed as a self-authenticating document under N.D.R.Ev. 902, nor did the State comply with Rule 902(11) or (12) to make the receipts self-authenticating documents. Further, the detective did not testify regarding how the documents came into existence. The testimony did not satisfy the requirements of Rule 803(6)(D), N.D.R.Ev.

[¶21] For this same reason the receipts admitted without foundation, including exhibit 7 – a Jiffy Lube receipt, exhibit 8 – a Rent-A-Center receipt, exhibit 10 – Walmart receipts, exhibit 12 – an Ace Hardware receipt, and exhibit 13 – Verizon Wireless receipts, were inadmissible hearsay. Therefore, the district court abused its discretion by admitting exhibits 4, 7, 8, 10, 12 and 13.

[¶22] Henderson objected to the admission of exhibit 5, Progressive Insurance documents. The State introduced the exhibit:

A This is the cover sheet from Progressive auto, Progressive insurance for two policies that belong —
Q And is it your testimony that you spoke with the representative from Progressive with regard to this investigation?
A Yes.
. . . .
A Yes. They sent both binders for the policies, which were this thick. They had to FedEx them. So this is the condensed version.
Q I want to draw your attention to page number 2 —
A Sure.

8

Q — in that document, if you will. Page 2 of that document indicates there were three payments made on policies; is that correct?

A I'm seeing — yes, correct. There's three. Well, I'm actually seeing four.

Henderson objected with the "same objections."

[¶23] An examination of exhibit 5 shows that the documents contain the condensed insurance policy information, including insurance holder information and a history of transactions. The detective testified the documents were not in the form in which he had received them because the company sent them in binders, and the exhibit does not contain all the documents from the binders. The documents lack sufficient authentication. The detective did not explain how these documents came into existence in the ordinary course of business, nor does the record contain an affidavit by which they may be self-authenticating under N.D.R.Ev. Rule 902(11) or (12). The district court misapplied the law, and abused its discretion by admitting exhibit 5.

[¶24] Similarly, exhibit 6, Credit Acceptance internal records, and exhibit 9, the rental agreement contract, are more than just receipts, and require further authentication and further explanation regarding how the record came into existence in the ordinary course of business and compliance with Rules 902(11) or (12), N.D.R.Ev. The district court misapplied the law by finding the testimony regarding these exhibits conformed with Rule 803(6)(D), N.D.R.Ev. The district court abused its discretion by admitting exhibits 6 and 9.

V

[¶25] We next consider whether these evidentiary errors are harmless. *Sanchez*, 2023 ND 106, ¶ 12. "If evidence was admitted in error, this Court will consider the entire record and decide in light of all the evidence whether the error was so prejudicial the defendant's rights were affected and a different decision would have occurred absent the error." *Id.* (citations omitted). "Erroneously admitted evidence which is cumulative to other properly

9

admitted evidence is not prejudicial, does not affect substantial rights of the parties, and accordingly, is harmless error." *Id.* (citations omitted).

[¶26] We cannot say these errors are harmless. The State charged Henderson with exploitation of an eligible adult under N.D.C.C. § 12.1-31-07.1(2)(a), requiring the State to prove the value of funds allegedly exploited exceed $50,000. The State further charged Henderson with criminal attempt of theft of property under N.D.C.C. § 12.1-23-05(2), requiring the State to prove the theft exceeded $10,000. Exhibits 1, 3-10, 12, and 13 are financial documents calculating the total value of the alleged exploitation and theft, without which the State cannot meet its burden. Furthermore, the aggregate errors amount to a substantial injustice affecting Henderson's rights. Given the pervasive errors admitting exhibits without proper authentication or as inadmissible hearsay, and considering a set value was alleged in each count, the judgment must be reversed.

[¶27] We need not address Henderson's objections to other exhibits because they are unnecessary to our decision.

VI

[¶28] We reverse the judgment.

[¶29] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr

10