# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 83

State of North Dakota,　　　　　　　　　　　　Plaintiff and Appellee

v.

Brent Lee Burton,　　　　　　　　　　　　Defendant and Appellant

## No. 20240286

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable David E. Reich, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Isaac O. Lees, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant.

**Bahr, Justice.**

[¶1]   Brent Burton appeals from a criminal judgment entered after a jury found him guilty of domestic violence. We conclude the district court did not violate Burton's Sixth Amendment right to confront his accuser, sufficient evidence supported authenticating the 911 call recording, and Burton failed to establish obvious error because an exception to hearsay applied to the recording. We affirm.

I

[¶2]   On May 22, 2024, around 9:30 p.m., two Bismarck police officers responded to a 911 domestic violence call at a Bismarck residence, the marital home of Burton and Burton's wife. The State subsequently charged Burton with domestic violence, a class B misdemeanor, under N.D.C.C. § 12.1-17-01.2(2)(a). Burton pleaded not guilty and proceeded to trial. In June 2024, the State filed a notice under N.D.R.Ev. 902(11) of its intent to use evidence of the 911 call recording, with a "Certificate of Authenticity for Domestic Records of Regularly Conducted Activity," signed by a records custodian for Central Dakota Communications ("CenCom").

[¶3]   In September 2024, the district court held a jury trial. At a conference on the morning of trial, the State informed the court it was unable to locate or subpoena the complaining witness, Burton's wife. Burton objected at the conference and at trial to the State's introduction of exhibit 1, which is the recording of the 911 call purported to have been made by Burton's wife.

[¶4]   The district court received the 911 call recording into evidence at trial, which was played to the jury. The State presented other evidence at trial, including testimony from the two responding police officers, an officer's body-worn camera recording that captured Burton's statements to one of the officers, and photographs taken by another officer of the victim's injuries. The jury found Burton guilty.

[¶5]   The district court sentenced Burton and entered a criminal judgment.

II

[¶6]   Burton argues the district court violated his Sixth Amendment right to confront his accuser.

[¶7]   Our standard for reviewing a claimed violation of a constitutional right, including the right to confront an accuser, is de novo. *State v. Good Bear*, 2024 ND 18, ¶ 21, 2 N.W.3d 721. The Confrontation Clause of the Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Under *Crawford v. Washington*, 541 U.S. 36, 59 (2004), "the admission of out-of-court testimonial statements in criminal cases is precluded, unless the witness is unavailable to testify and the accused has had an opportunity to cross-examine the declarant." *State v. Poulor*, 2019 ND 215, ¶ 6, 932 N.W.2d 534 (citation omitted); *see also Davis v. Washington*, 547 U.S. 813, 821 (2006).

[¶8]   The Confrontation Clause does not apply to nontestimonial hearsay. *Good Bear*, 2024 ND 18, ¶ 21; *see also Crawford*, 541 U.S. at 68. "However, even when a hearsay statement falls within an exception to the rule, it may not be admitted if the statement is testimonial in violation of the Sixth Amendment." *Good Bear*, ¶ 22. Statements are testimonial when they "(1) [are] a product of formal interview, (2) [are] obtained with government involvement, and (3) have a law enforcement purpose." *Id.* ¶ 23 (quoting *State v. Vickerman*, 2022 ND 184, ¶ 17, 981 N.W.2d 881). This Court explained that statements are:

> nontestimonial when the primary purpose is to "enable police assistance to meet an ongoing emergency," and are considered testimonial when the "circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

*Id.* (quoting *State v. Froelich*, 2017 ND 154, ¶ 9, 897 N.W.2d 905); *see Davis*, 547 U.S. at 822 ("Statements are nontestimonial when made in the course of police

interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.").

[¶9]   In *Michigan v. Bryant*, the United States Supreme Court provided further guidance on determining whether statements are testimonial. "[W]hen a court must determine whether the Confrontation Clause bars the admission of a statement at trial," the Court explained, "it should determine the 'primary purpose of the interrogation' by objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances in which the interrogation occurs." 562 U.S. 344, 370 (2011). The Court further explained,

> The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation.

*Id*. However, the existence or non-existence "of an ongoing emergency is not the touchstone of the testimonial inquiry; rather, the ultimate inquiry is whether the 'primary purpose of the interrogation [was] to enable police assistance to meet [the] ongoing emergency.'" *Id.* at 374 (quoting *Davis,* 547 U.S. at 822). "[W]hether an ongoing emergency exists is simply one factor—albeit an important factor— that informs the ultimate inquiry regarding the 'primary purpose' of an interrogation." *Id.* at 366. Similarly, "[f]ormality is not the sole touchstone" of the primary purpose inquiry; while "formality suggests the absence of an emergency" and thus an increased likelihood "the purpose of the interrogation is to 'establish or prove past events potentially relevant to later criminal prosecution,' informality does not necessarily indicate the presence of an emergency or the lack of testimonial intent." *Id.* (citation omitted). Rather, the Court explained, **"***Davis* requires a combined inquiry that accounts for both the declarant and the interrogator. In many instances, the primary purpose of the interrogation will be most accurately ascertained by looking to the contents of both the questions and the answers." *Id.* at 367-68. "The combined approach also

3

ameliorates problems that could arise from looking solely to one participant." *Id.* at 368. "Predominant among these is the problem of mixed motives on the part of both interrogators and declarants." *Id.* The Court emphasized "a conversation which begins as an interrogation to determine the need for emergency assistance" can "evolve into testimonial statements." *Id.* at 365 (quoting *Davis*, 547 U.S. at 828).

[¶10] Burton contends the 911 call was made after the alleged assault concluded. He asserts the timing and circumstances objectively show no "ongoing emergency" requiring immediate police assistance. Burton asserts the 911 caller's report, that her husband "had grabbed and slapped her," used past tense verbs and described completed actions. He further argues the State failed to establish Burton's wife was "unavailable," as required by *Crawford* before introducing her "testimonial" statements, and falls short of the unavailability standard under N.D.R.Ev. 804(a)(5)(A) or (B). Without findings the declarant was unavailable and a prior opportunity for cross-examination, Burton argues admission of the "testimonial" 911 statements violated his constitutional rights to confront his accuser.

[¶11] In *Froelich*, this Court concluded the admitted portion of a 911 call played for the jury did not violate the Confrontation Clause because the statements were nontestimonial. 2017 ND 154, ¶ 10. In so holding, we explained that the declarant's statements were made during a 911 call to meet an ongoing emergency; a review of the recording confirmed the declarant made the 911 call while the confrontation was happening; the declarant provided information describing current circumstances requiring police assistance; and the declarant provided relevant information to the 911 dispatcher to enable law enforcement to respond to the situation. *Id.*

[¶12] Here, the district court listened to the 911 call recording and found the "primary purpose" of the call was to address an ongoing emergency or situation, rather than to gather information about a past event:

> THE COURT: Okay. I understand the concern and I understand the confrontation clause issue. I am going to allow it. I don't think you need anything—you know, where they ask

4

questions, date of birth, and that kind of stuff. I think it should stop where, you know, he says, "law enforcement will be there shortly, just hang on," or something like that. *But she's reporting an assault, basically. She indicates that the defendant is still there at the time. And so it seems like it's an ongoing situation to me.*

I understand her voice is very controlled. You know, it's not the excited utterance I guess, at least not from just hearing the tone of her voice. But I think it's similar to *Davis* where the suspect had just fled. In this case she's talking about the defendant still being in the room and then going to the bedroom. So still being in the same location.

So I'm going to allow it, I think, under *Davis* and *Froelich*, at least that portion of it. I understand the constitutional issues and— but I think under those—it's more similar to those cases than it is to *Crawford* for that portion of the 911 call.

(Emphasis added.) The court found the 911 caller was reporting an assault, indicated the defendant was "still there at the time," and the emergency was an "ongoing situation." The court thus determined the portion of the 911 call ultimately played at trial was nontestimonial and therefore admissible.

[¶13] On our review, we conclude the circumstances of the 911 call objectively indicate the primary purpose of the interaction was to enable law enforcement to meet an ongoing emergency. The 911 caller, self-identified as Burton's wife, described current circumstances requiring police assistance. Burton's wife called 911 to report Burton assaulted her. Based on the context of the call, the assault occurred immediately or shortly before the call. During the call, Burton's wife reported Burton is in the room, staring at her; she identified her injuries and that she did not need an ambulance; she stated she is not able to get into another room and lock the door; she stated Burton has guns and they are downstairs; and she stated who else was in the house and where. After the 911 operator indicated officers were on the way, Burton's wife indicated Burton had just walked away.

[¶14] Similarly, the 911 operator's questions on the call demonstrate the "primary purpose" of the operator's questions was to gather information to allow the police officers to respond to the domestic violence call. The 911 operator asked the caller the address of the emergency; what the emergency is;

5

whether the caller is injured; what the caller's injuries are; where he (Burton) is "at right now"; whether the caller is "able to get into another room and lock the door"; whether he (Burton) has any weapons; what kind of weapons; whether the caller needs an ambulance; the caller and Burton's names; whether there is anybody else in the house; where the other person in the house is "at right now"; and in what room of the house the caller and Burton are in. The operator told the caller officers are on the way and he will stay on the line until the officers get there.

[¶15] The caller and 911 operator spoke "about events *as they were actually happening*[.]" *Davis*, 547 U.S. at 827. What were the caller's injuries and did she need an ambulance? Where was Burton? Could the caller lock herself in another room? Was anyone else in the house and where? Did Burton have weapons and where? All these questions were to address the current circumstances to assist police (and possibly medical personnel) in responding, not to determine what had occurred prior to the call. *Id.* (stating "the elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to learn . . . what had happened in the past"). A 911 call, "at least the initial interrogation conducted in connection with a 911 call, is ordinarily not designed primarily to 'establis[h] or prov[e]' some past fact, but to describe current circumstances requiring police assistance." *Id.* The interaction between the caller and the 911 operator was also informal.

[¶16] We conclude the district court did not err because the 911 call recording is that of an ongoing emergency and the interaction's "primary purpose" was to provide police with the information necessary to immediately respond to the incident. For these reasons, we hold Burton's wife's statements were nontestimonial and their admission into evidence at Burton's trial did not violate the Confrontation Clause of the Sixth Amendment.

III

[¶17] Burton argues the district court improperly admitted the 911 call recording, exhibit 1, into evidence at trial. He argues the exhibit was not properly

authenticated under N.D.R.Ev. 901 and contains inadmissible hearsay under N.D.R.Ev. 802.

[¶18] The district court has broad discretion in deciding whether to admit or exclude evidence, and the court's determination will not be reversed on appeal absent an abuse of discretion. *See State v. Chisholm*, 2012 ND 147, ¶ 10, 818 N.W.2d 707; *State v. Thompson*, 2010 ND 10, ¶ 10, 777 N.W.2d 617. A court abuses its discretion in evidentiary rulings when it acts arbitrarily, capriciously, or unreasonably, or it misinterprets or misapplies the law. *Chisholm*, ¶ 10.

A

[¶19] Burton argues the district court erred by admitting the 911 call recording into evidence without proper authentication under N.D.R.Ev. 901.

[¶20] "Rule 901, N.D.R.Ev., provides for methods of authentication of evidence." *Meiers v. N.D. Dep't of Transp.*, 2025 ND 21, ¶ 39, 16 N.W.3d 423 (quoting *State v. Cook*, 2018 ND 100, ¶ 14, 910 N.W.2d 179). Under Rule 901(a), all authentication requires is that the party offering the item of evidence "produce evidence sufficient to support a finding that the item is what the proponent claims it is." *Cook*, ¶ 16 (citation omitted); *see also Meiers*, ¶ 39 (discussing authentication requirements). Rule 901(a) "treats authentication as a matter of conditional relevance to be decided under N.D.R.Ev. 104(b)." *In re Est. of Beach*, 2022 ND 13, ¶ 10, 969 N.W.2d 198. "If the court decides sufficient proof has been introduced to allow a finding the document is authentic, Rule 901(a) is satisfied and the question of weight is for the trier of fact." *Id*.

[¶21] A party can authenticate or identify an item of evidence through multiple means. N.D.R.Ev. 901(b). Rule 901(b) provides some examples and "places no limitations upon the number of methods of proving authentication." *Meiers*, 2025 ND 21, ¶ 39 (citation omitted). Rule 901(b)(1) and (4) provide examples of authentication, including testimony of a witness with knowledge "that an item is what it is claimed to be," and "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." *State v. Henderson*, 2024 ND 42, ¶ 9, 4 N.W.3d 223 (quoting *State v. Hirschkorn*, 2020 ND 268, ¶ 9, 952 N.W.2d 225). "[T]he proponent of

offered evidence need not rule out all possibilities inconsistent with authenticity or conclusively prove that evidence is what it purports to be; rather, the proponent must provide proof sufficient for a reasonable juror to find the evidence is what it purports to be." *Thompson*, 2010 ND 10, ¶ 21 (citations omitted).

[¶22] The State introduced exhibit 1 claiming it to be a recording of a 911 call made by Burton's wife. Burton argues the State failed to produce evidence sufficient to support a finding the 911 caller was Burton's wife. However, Burton's brief does not cite to the record showing where Burton objected to admission of the recording and argued improper authentication because the State did not provide evidence the 911 caller was Burton's wife. *See* N.D.R.App.P. 28(b)(7)(A) (providing appellant's brief's argument must contain "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"), 28(b)(7)(B)(ii) (providing an appellant's brief must contain "citation to the record showing that the issue was preserved for review; or a statement of grounds for seeking review of an issue not preserved"). When the 911 recording was offered into evidence at trial, Burton only generally argued "improper authentication" and that it was not "self-authenticating" as a "regularly connected [sic] business activity." Moreover, Burton has not asked us to review this specific issue for obvious error. Although Burton's brief does not comply with the appellate rules, and Burton does not appear to have raised this precise objection, we address it because Burton made a general objection on the ground of authentication.

[¶23] Self-identification by a person who makes a call is not sufficient evidence of the authenticity of the conversation; however, additional evidence, including circumstantial evidence, of the identity of the caller may provide sufficient evidence to authenticate a call. *See State v. Thompson*, 803 S.E.2d 44, 51 (S.C. Ct. App. 2017) ("Authentication of a 911 caller's identity can be accomplished by combining the caller's self-identification with circumstances surrounding the call."), and cases cited therein; 5 *Weinstein's Federal Evidence* § 901.07[1][b] (2025) ("Self-identification by the person who places a call on the telephone is not sufficient evidence of the authenticity of the conversation; additional evidence of identity is required. The additional evidence to identify the person who placed

the call . . . can be purely circumstantial."); *Id.* § 901.07[1][c] ("Events prior or subsequent to a telephone conversation may sufficiently authenticate the call, with or without any further identification of the speakers."); 2 *McCormick on Evidence* § 228 (9th ed. Feb. 2025 Update) ("Self-identification by a speaker during a telephone conversation is not sufficient to authenticate the speaker's voice and to permit a witness to testify about the call. . . . [I]dentification may be accomplished by circumstantial evidence pointing to the identity of the speaker.").

[¶24] When the 911 call recording was offered into evidence, one police officer testified the officer had reviewed the recording of the call, the officer recognized the DVD containing the call recording, and it was in the same or substantially similar condition. The officer testified he had reviewed the DVD, initialed and dated the back, and noted the certificate of authenticity of CenCom attached to it. Later at trial, another police officer testified that officer had responded to the call for service at the residence, went into the home, and spoke to a woman the officer identified as Burton's wife. This officer took photographs of Burton's wife's injuries and also described the injuries: "I observed redness and some abrasions to both of her forearms, along with her right bicep, and what also appeared to be redness and swelling, similar to a welt that resembled a partial handprint on the back left tricep."

[¶25] We conclude the State offered sufficient circumstantial evidence for a reasonable juror to find the 911 call recording is what the State claims it to be. That evidence includes: Burton's wife identified herself on the call; Burton's wife identified what happened; police officers responded to the address provided by the caller, the Burtons' marital home; the officers located and identified Burton's wife at the home; one officer testified at trial Burton's wife had injuries, consistent with what the caller reported on the 911 call; and Burton's statement on the body-worn camera admitting he got physical with his wife, grabbing her and forcing her down into a chair. This circumstantial evidence, coupled with the officer's testimony on exhibit 1 and the certificate of authenticity of the 911 call recording, sufficiently authenticated Burton's wife's identity on the call. Thus, the State introduced sufficient proof to allow a finding the 911 call recording was what it purported to be, i.e., a 911 call made by Burton's wife,

9

satisfying Rule 901 and leaving the question of weight for the jury. *In re Est. of Beach*, 2022 ND 13, ¶ 10.

[¶26] We conclude the district court did not abuse its discretion by admitting the 911 call recording into evidence because sufficient circumstantial evidence supported authentication under N.D.R.Ev. 901.

B

[¶27] Burton argues the district court improperly admitted hearsay evidence in violation of N.D.R.Ev. 802. He contends the 911 call recording does not qualify under the hearsay exceptions in N.D.R.Ev. 803(1), (2), or (3). Alternatively, Burton argues the court committed "obvious error" under N.D.R.Crim.P. 52(b) by admitting the 911 call recording when no hearsay exception applied.

1

[¶28] "A party objecting to the introduction of evidence must state the specific ground of objection, if the specific ground is not apparent from the context." *Henderson*, 2024 ND 42, ¶ 7 (quoting *State v. Thomas*, 2022 ND 126, ¶ 17, 975 N.W.2d 562); *see also* N.D.R.Ev. 103(a)(1)(B).

> A party must make a specific objection to evidence at the time it is offered for admission into evidence to give the opposing party an opportunity to argue the objection and attempt to cure the defective foundation, and to give the trial court an opportunity to fully understand the objection and appropriately rule on it.

*Henderson*, ¶ 7 (quoting *Thomas*, ¶ 17). "An objection indicating the specific evidence rules by number supporting the grounds for the objection is sufficient to satisfy N.D.R.Ev. 103(a)(1)(B)." *Thomas*, ¶ 17.

[¶29] Here, Burton's objection before trial was focused on responding to the Confrontation Clause issue contending the exhibit was testimonial. His objections during trial when the exhibit was offered were limited to the Confrontation Clause arguments and to improper authentication of the exhibit. Because Burton did not object specifically on the grounds of hearsay when the exhibit was offered, we only review for obvious error. *See* N.D.R.Crim.P. 52(b)

("An obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention.").

[¶30] "To establish an obvious error, the defendant must show: (1) error; (2) that is plain; and (3) the error affects the defendant's substantial rights." *State v. Woodman*, 2025 ND 12, ¶ 5, 16 N.W.3d 164 (quoting *State v. Gardner*, 2023 ND 116, ¶ 5, 992 N.W.2d 535). "To constitute obvious error, the error must be a clear deviation from an applicable legal rule under current law. There is no obvious error when an applicable rule of law is not clearly established." *Id.* (quoting *Gardner*, ¶ 5). We conclude Burton failed to establish the court erred by admitting the 911 call. While multiple hearsay exceptions under N.D.R.Ev. 803 may apply, we conclude the "present sense impressions" exception under N.D.R.Ev. 803(1) is dispositive.

[¶31] Under N.D.R.Ev. 801(c), hearsay is defined as a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." "As a general rule, hearsay evidence is inadmissible." *Good Bear*, 2024 ND 18, ¶ 9 (quoting *Vickerman*, 2022 ND 184, ¶ 9). Under N.D.R.Ev. 802, hearsay is not admissible unless a statute, the North Dakota Rules of Evidence, or other rules prescribed by the North Dakota Supreme Court, say otherwise. *See Good Bear*, 2024 ND 18, ¶ 12 ("Hearsay is generally inadmissible as evidence pursuant to N.D.R.Ev. 802 unless it falls within one of the exceptions outlined in N.D.R.Ev. 803 or N.D.R.Ev. 804."). Rule 803, N.D.R.Ev., provides numerous exceptions to the rule against hearsay. *State v. Teggatz*, 2017 ND 171, ¶ 9, 898 N.W.2d 684.

[¶32] Rule 803(1), N.D.R.Ev., provides that "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived the event or condition," is an exception to the rule against hearsay. *See* 4 C. Mueller & L. Kirkpatrick, *Federal Evidence* § 8:67, p. 578-583 (4th ed. 2013) (providing the exception's three requirements: "the statement be contemporaneous with the act, event, or condition—that is, made while the

speaker perceives it or immediately thereafter"; "the speaker must have perceived the act, event, or condition"; and "the statement must describe or explain the act, event, or occurrence perceived"); 5 *Weinstein's Federal Evidence* § 803.03[1]-[4] (discussing the three requirements). "The theory behind the N.D.R.Ev. 803(1) exception for present sense impression is that 'substantial contemporaneity of the event and the statement negate the likelihood of memory deficiencies and deliberate misstatements.'" *Teggatz*, 2017 ND 171, ¶ 11 (quoting *State v. Jensen*, 418 N.W.2d 776, 779 (N.D. 1988)).

[¶33] On this record, for reasons already discussed, we conclude the evidence supports applying the "present sense impressions" exception under N.D.R.Ev. 803(1). Burton's wife's statements were made immediately or shortly after the assault, which she perceived, and her statements describe or explain the assault. The evidence showing the requisite immediacy includes Burton's wife's statements to the 911 call operator that Burton was still there staring at her and that she was not able to get into another room and lock the door. *See* 4 *Federal Evidence* § 8:67, p. 583 ("There is no doubt that 911 emergency calls can fit the exception for present sense impressions. Almost always people who place such calls are describing acts, events, or conditions as they appear to the speaker at that very moment.").

[¶34] Because an exception under N.D.R.Ev. 803(1) properly applies, the district court did not abuse its discretion by admitting into evidence the 911 call recording. We conclude Burton failed to show the district court committed obvious error requiring reversal.

IV

[¶35] We have considered the parties' other arguments and conclude they are unnecessary to our decision, without merit, or were inadequately briefed. We affirm the criminal judgment.

[¶36] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers

Jerod E. Tufte
Douglas A. Bahr