# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 143

State of North Dakota,

Plaintiff and Appellee

v.

Winston Leon Hendricks,

Defendant and Appellant

## No. 20240304

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Kirsten M. Sjue, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Nathan K. Madden, Assistant State's Attorney, Williston, ND, for plaintiff and appellee; on brief.

Kiara C. Kraus-Parr, Grand Forks, ND, for defendant and appellant; on brief.

**Bahr, Justice.**

[¶1]   Winston Hendricks appeals from a criminal judgment entered after a jury found him guilty of two counts of child neglect. He argues the district court erred by finding sufficient evidence existed to convict him and abused its discretion by allowing the admission of recordings of jail calls. We affirm the judgment.

I

[¶2]   In June 2024, the State charged Hendricks with attempted gross sexual imposition, gross sexual imposition, two counts of child neglect, and indecent exposure. In September and October 2024, the district court held a four-day jury trial. After the close of the State's case, and again after the defense closed, Hendricks moved for acquittal under N.D.R.Crim.P. 29. The court denied both motions. The jury found Hendricks guilty on the two counts of child neglect, and the court entered judgment of acquittal on the remaining charges. The court sentenced Hendricks on the two counts of child neglect and entered judgment.

II

[¶3]   Hendricks argues the district court erred by finding sufficient evidence existed to convict him of child neglect. Specifically, Hendricks argues the conduct the State alleges he committed does not meet the definition of "child neglect" under N.D.C.C. § 14-09-22.1. He acknowledges he did not make this argument in his motions under N.D.R.Crim.P. 29, but requests this Court review for obvious error.

A

[¶4]   Hendricks's motions for judgment of acquittal were on different grounds from his argument asserted on appeal. "If a motion for judgment of acquittal was made at trial on specified grounds and those grounds did not include the claim on appeal, the defendant does not preserve that issue for review." *State v. Adams*, 2024 ND 139, ¶ 25, 10 N.W.3d 87; *see also State v. Smith*, 2024 ND 127, ¶ 5, 9

N.W.3d 683 (indicating when a Rule 29 motion is made at trial, "the specific grounds argued before the district court are the only arguments preserved for appeal"). "However, it does not foreclose the exercise of our discretion to review forfeited errors under the obvious error standard as provided by N.D.R.Crim.P. 52(b)." *Adams*, ¶ 25; *see also State v. Dahl*, 2022 ND 212, ¶¶ 9, 11, 982 N.W.2d 580 (explaining the statement—"if a motion for judgment of acquittal was made at trial on specified grounds and those grounds did not include the claim on appeal, the defendant does not preserve that issue for review"—"should not be read to foreclose exercise of our discretion to review forfeited errors under the obvious error standard").

[¶5]   "Obvious error review consists of determining whether (1) there was an error, (2) that was plain, and (3) that affected a party's substantial rights." *State v. Watts*, 2024 ND 158, ¶ 7, 10 N.W.3d 563 (quoting *State v. Gaddie*, 2022 ND 44, ¶ 4, 971 N.W.2d 811). The defendant must demonstrate the error is a "clear or obvious deviation from an applicable legal rule." *Id.* (cleaned up). This Court may rectify obvious error, but "will only do so when the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

B

[¶6]   Generally, "[t]o successfully challenge the sufficiency of the evidence on appeal, the defendant must show the evidence, when viewed in the light most favorable to the verdict, permits no reasonable inference of guilt." *Watts*, 2024 ND 158, ¶ 14 (quoting *State v. Haney*, 2023 ND 227, ¶ 7, 998 N.W.2d 817). This Court assumes "the jury believed all evidence supporting a guilty verdict and disbelieved contrary evidence" and "does not reweigh conflicting evidence or judge the witnesses' credibility." *Id.*

[¶7]   Under N.D.C.C. § 14-09-22.1, the offense of "neglect of child" is defined, in relevant part, as:

> A parent, adult family or household member, guardian, or other custodian of any child, who *willfully* commits any of the following offenses is guilty of a class C felony:

2

1. *Fails to provide* proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals.

(Emphasis added.)

[¶8] The preliminary instructions explained the State alleged Hendricks committed the child neglect offenses by "forcing Jane Doe to consume quantities of Nyquil, alcohol, and/or marijuana/THC gummies[,]" and "by forcing John Doe to consume a quantity of Nyquil." The jury instructions provided the offenses' essential elements:

The State's burden of proof is satisfied if the evidence shows, beyond a reasonable doubt, all of the following essential elements:
1. On, about, or between October 26, 2023, and March 3, 2024, in Williams County, North Dakota;
2. The Defendant, Winston Hendricks, was the parent of [redacted], a minor child; and
3. *Willfully failed to provide* proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health, or morals.

(Emphasis added.)

[¶9] Hendricks, asserting child neglect "criminalizes failures to provide necessary care, focusing on omissions rather than affirmative actions," argues his conduct was not child neglect because his conduct was "affirmative conduct." Hendricks asserts *State v. Gardner*, 2023 ND 116, 992 N.W.2d 535, supports his position. In *Gardner*, we explained:

[I]n 2015, the Legislature separated the offenses of child abuse from neglect of a child. In doing so, the Legislature separated conduct resulting in an offense of child abuse from conduct resulting in an offense of child neglect. What remains under N.D.C.C. § 14-09-22 is conduct resulting in the offense of child abuse, which includes two alternative means of committing the crime: (1) a custodian *inflicting*

3

upon the child *mental or bodily injury* or (2) a custodian *allowing mental or bodily injury to be inflicted* upon the child.

*Id.* ¶ 17 (emphasis added); *see also* 2015 N.D. Sess. Laws ch. 127, § 3 (separating offenses of child abuse from neglect of a child, moving child neglect from N.D.C.C. § 14-09-22 to N.D.C.C. § 14-09-22.1). Hendricks argues the legislature's separation of the offenses of child abuse under N.D.C.C. § 14-09-22 and child neglect under N.D.C.C. § 14-09-22.1 "demonstrates clear legislative intent to distinguish between active harmful conduct (abuse) and failures to fulfill parental obligations (neglect)."

[¶10] Hendricks asserts the evidence at trial "exclusively demonstrated *affirmative conduct* through the *active administration* of Nyquil to the children," rather than a failure to provide proper care. He asserts the State focused on testimony Hendricks was "forcing the kids to take exorbitant amounts of Nyquil," which, if criminal, would properly fall under child abuse rather than child neglect. He asserts the State presented "no evidence" of omissions or failures to provide care. Thus, he contends the jury's verdict was based on a "fundamental misapplication" of child neglect under N.D.C.C. § 14-09-22.1 to conduct that would be properly charged as child abuse under N.D.C.C. § 14-09-22.

[¶11] Hendricks misconstrues the legislature's intent in separating the offenses of abuse of child and neglect of child. Both offenses have the same culpability requirement—"willfully." N.D.C.C. §§ 14-09-22(1), 14-09-22.1. The term "willfully" means to engage in conduct "intentionally, knowingly, or recklessly." N.D.C.C. § 12.1-02-02(1)(e). By this definition, a person who fails to provide proper parental care, and "it is his purpose to do so," can have the required culpability for child neglect. N.D.C.C. § 12.1-02-02(1)(a) (defining "intentionally"). Moreover, a person who fails to provide proper parental care "in conscious and clearly unjustifiable disregard" of the risks, "such disregard involving a gross deviation from acceptable standards of conduct," can also have the required culpability for child neglect. N.D.C.C. § 12.1-02-02(1)(c) (defining "recklessly"). Both "intentional" and "reckless" culpabilities may include active conduct. Accordingly, a "willful" failure to provide proper parental care is not

4

limited to omissions or passive conduct. Rather, it may encompass the deliberate choice to act or refrain from acting.

[¶12] The distinction between the offenses of abuse of child and neglect of child is not the culpability requirement; it is the infliction of injury required for the offense of abuse of child. As explained in *Gardner*, there are two alternative means of committing child abuse: "(1) a custodian *inflicting* upon the child *mental or bodily injury* or (2) a custodian *allowing mental or bodily injury to be inflicted* upon the child." *Gardner*, 2023 ND 116, ¶ 17 (emphasis added). Under N.D.C.C. § 14-09-22(1), the offense of abuse of child requires the offender "willfully" inflict or allow to be inflicted upon the child "mental *injury* or bodily *injury*, substantial bodily *injury*, or serious bodily *injury*[.]" (Emphasis added.) The offense of neglect of child under N.D.C.C. § 14-09-22.1 does not require "injury" be inflicted on the child. Thus, the legislature separated the offenses of child abuse and child neglect, not based on action or inaction, and not based on different culpability requirements, but based on whether mental or bodily injury is inflicted on the child.

[¶13] Based on the evidence, the jury could have found Hendricks forced Jane Doe to consume quantities of Nyquil or marijuana/THC gummies, and forced John Doe to consume a quantity of Nyquil. The jury could have further found Hendricks intentionally, knowingly, or recklessly failed to provide proper parental care by forcing the children to consume quantities of Nyquil or marijuana/THC gummies. We conclude the evidence was sufficient to support a conviction of child neglect under N.D.C.C. § 14-09-22.1, and that the district court did not err in denying Hendricks's Rule 29 motions for acquittal.

III

[¶14] Hendricks argues the district court abused its discretion by allowing the admission of recordings of jail calls. He claims the State failed to properly authenticate the recordings under N.D.R.Ev. 901(a) and failed to establish a hearsay exception.

5

## A

[¶15] Generally, "[t]he district court has broad discretion in deciding whether to admit or exclude evidence, and the court's determination will not be reversed on appeal absent an abuse of discretion." *State v. Burton*, 2025 ND 83, ¶ 18, 20 N.W.3d 136. A court abuses its discretion in evidentiary rulings when it acts arbitrarily, capriciously, or unreasonably, or it misinterprets or misapplies the law. *Id.*

## B

[¶16] Rule 901, N.D.R.Ev., provides methods for the authentication of evidence. *Burton*, 2025 ND 83, ¶ 20. Rule 901(a) reads, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(a) "treats authentication as a matter of conditional relevance to be decided under N.D.R.Ev. 104(b)." *Est. of Beach*, 2022 ND 13, ¶ 10, 969 N.W.2d 198. "If the court decides sufficient proof has been introduced to allow a finding the document is authentic, Rule 901(a) is satisfied and the question of weight is for the trier of fact." *Id.* As the explanatory note to Rule 901 explains, "Authentication is merely a preliminary question of conditional relevancy and, as such, is to be determined according to the standards and requirements of N.D.R.Ev. Rule 104(b). A determination that evidence is authentic does not render it admissible. It may be hearsay, e.g., and excluded on that ground."

[¶17] "A party can authenticate or identify an item of evidence through multiple means. N.D.R.Ev. 901(b). Rule 901(b) provides some examples and 'places no limitations upon the number of methods of proving authentication.'" *Burton*, 2025 ND 83, ¶ 21 (quoting *Meiers v. N.D. Dep't of Transp.*, 2025 ND 21, ¶ 39, 16 N.W.3d 423); *see, e.g.,* N.D.R.Ev. 901(b)(5)-(6) (listing as examples "[a]n opinion identifying a person's voice" and "evidence that a call was made to the number assigned" to "a particular person"); N.D.R.Ev. 901(b)(9) (listing as an example "[e]vidence describing a process or system and showing that it produces an accurate result"). "[T]he proponent of offered evidence need not rule out all

possibilities inconsistent with authenticity or conclusively prove that evidence is what it purports to be; rather, the proponent must provide proof sufficient for a reasonable juror to find the evidence is what it purports to be." *Burton*, ¶ 21 (quoting *State v. Thompson*, 2010 ND 10, ¶ 21, 777 N.W.2d 617).

[¶18] At trial, during a police officer's testimony, the State offered into evidence recordings of jail calls Hendricks made to his son. The officer testified he was a sergeant with the Williston Police Department, had just under ten years of law enforcement experience, was part of the street crimes unit that tracked down and arrested Hendricks, and was familiar with the facts of the case. After the officer identified Hendricks, the State elicited the following testimony:

> Q. Okay. Now prior to the Defendant being tracked down by the street crimes unit, including yourself, are you aware of some non-attorney jail calls the Defendant placed to his son, Dustin Hendricks?
> A. Yes.
> Q. And prior to today's—giving your testimony today, had you had an opportunity to listen to those jail calls?
> A. Yes; I did.
> Q. Would you recognize those jail calls if you were to hear them again?
> A. Yes, I would.
> Q. Would you recognize the voices on those calls if you were to hear them again?
> A. Yes.
> Q. One of the voices on those calls, is that the voice of the Defendant?
> A. Yes.
> Q. Are those calls a fair and accurate representation of the phone calls that he placed to his son, Dustin Hendricks, while he was trying to evade capture?
> A. Yes.

At this point, the State offered the recordings into evidence. Hendricks objected, and the State provided the following response:

> MR. WILLIAMS: Your Honor, the proper foundation has already been laid as it relates to these audio calls. Jail calls—it's

7

undisputed that non-attorney jail phone calls are monitored by the jail on a regular basis, and that is for purposes of not only safety at the jail and the other inmates, as well as the staff at the jail, but they are also monitored for quality control purposes.

The rule does not require—no evidentiary rule or in criminal procedure requires that the actual custodian who maintains the calls at the jail has to be the person to authenticate the voices that are heard on the calls.

[The officer] has already identified he works in law enforcement. He was part of the team that tracked down and arrested the Defendant, and he has listened to the calls prior to his testimony today.

The district court overruled the objection, stating it is "satisfied there has been a sufficient foundation made[.]"

[¶19] The officer testified about his law enforcement position and years of law enforcement experience. He explained his involvement in the case, that he was aware of the recordings, that he previously listened to the recordings, that he would recognize the recordings if he heard them again, and that he recognized the voices on the recordings. The officer identified one of the voices on the recordings as Hendricks's voice. He further testified the recordings are a "fair and accurate representation of the phone calls [Hendricks] placed to his son[.]" After Hendricks objected to the admission of the evidence, the State argued "proper foundation has already been laid" for the recordings because the calls were "monitored by the jail on a regular basis" and the officer "identified he works in law enforcement." Although the State could have elicited further testimony from the officer supporting his testimony, rather than merely arguing to the district court what was purportedly "undisputed" about the jail's monitoring of non-attorney jail phone calls, we conclude the State offered sufficient evidence for a reasonable juror to find the jail call recordings are what the State claims them to be, satisfying Rule 901. *See Burton*, 2025 ND 83, ¶ 25 (explaining circumstantial evidence coupled with officer's testimony sufficiently authenticated the 911 call recording); 31 *Wright & Miller's Federal Practice & Procedure* § 7110 (2d ed.) (May 2025 Update) ("Most courts favor a more flexible approach, holding that a sound recording may be admitted where the evidence, taken as a whole, suggests that the recording is authentic."); 5 *Weinstein's Federal*

8

*Evidence* § 901.07(1)(c) (2d ed. 2025) ("Events prior or subsequent to a telephone conversation may sufficiently authenticate the call, with or without any further identification of the speakers."); 5 *Mueller & Kirkpatrick's Federal Evidence* § 9:14 (4th ed.) (July 2025 Update) ("[C]ourts may find authentication on the basis of testimony by a person familiar with the conversation being recorded who attests to the accuracy of the recording. The establishment of the foundation is also sometimes aided by a presumption of official regularity.").

C

[¶20] Hendricks argues on appeal the recordings are hearsay and the State failed to establish a hearsay exception. Hendricks acknowledges he did not object to admission of the recordings on hearsay grounds. He argues the admission of the recordings constitutes obvious error requiring reversal. The State argues Hendricks's statements are an opposing party's statement under N.D.R.Ev. 801(d)(2) and, thus, not hearsay.

[¶21] We recently discussed "the roles of the district court and the parties before the court" when a party does not object to evidence. *State v. Kennedy*, 2025 ND 130, ¶ 15. We explained it is the responsibility of the party, not the district court, to object to evidence the party believes is inadmissible. *Id.* ¶ 16. We further explained that a party's failure to object to the admission of evidence precludes the opposing party "from arguing the evidence's admissibility and the court from conducting the analysis required" under the applicable rule of evidence. *Id.* A court's exclusion of evidence without objection could "usurp the role of counsel and hinder counsel's trial strategy." *Id.* ¶ 18. "A party may intentionally not object to potentially inadmissible evidence for numerous strategic reasons. The court ruling on the admissibility of evidence when not invited to by a party can disrupt a party's trial presentation and sabotage a party's trial strategy." *Id.* (cleaned up). Finally, we explained that "[t]here may be occasions when a party introduces evidence that is so prejudicial," such as when the admission of the evidence impacts a party's constitutional right, that "the court should intervene despite the lack of an objection." *Id.*

[¶22] Based on the specific facts of this case, including the nature of the evidence at issue, the context in which it was introduced, and the potential purposes for which it was introduced, we conclude Hendricks has not demonstrated the district court erred by not excluding the recordings on grounds of hearsay when Hendricks did not object to their admission on that ground.

[¶23] We conclude the district court did not abuse its discretion by admitting the recordings of the jail calls.

IV

[¶24] We affirm the criminal judgment.

[¶25] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr